**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Homer PITTMAN, Helen Jakob,**
**Defendants-Appellants,**

and

**L. C. Christensen et al., Defendants.**

**No. 18652.**

United States Court of Appeals,
Seventh Circuit.

Sept. 24, 1971.

---

Gerald T. Flynn, Racine, Wis., for defendants Homer Pittman and Helen Jakob; Thomas G. Hetzel, Racine, Wis., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Stephen Schwarz, Atty., U. S. Dept. of Justice, Washington, D. C., David J. Cannon, U. S. Atty., Milwaukee, Wis., Meyer Rothwacks, Bennet N. Hollander, Attys., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee; Joseph P. Stadtmueller, Asst. U. S. Atty., of counsel.

Before KNOCH, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

The United States brought this action to foreclose federal tax liens against six parcels of real estate allegedly owned by the taxpayer Homer Pittman.[1] The district court ordered the liens foreclosed and the property sold to satisfy the tax claim. The taxpayer appeals contending that the tax has been satisfied by a prior levy on one of the six parcels.

1. This case relates solely to the tax liability of Homer Pittman. Helen Jakob, the other appellant, was a party below because legal title to some of the real property involved in the foreclosure action was in her name. The other parties set forth in the caption, who are not involved in this appeal, were named as party-defendants because they might have or claim an interest in the real estate.

The issue presented is whether there was a levy effective to satisfy the tax.

Certain facts are not subject to dispute on this appeal. Pittman's income tax liability to the United States was $34,085.25 plus interest. Assessments of such taxes and demands for their payment were legally made on September 23, 1960, and August 5, 1966. *See* Internal Revenue Code of 1954, 26 U.S.C. § 6303(a). Upon such assessment and Pittman's failure to pay the tax, a lien arose in favor of the United States on any interest which Pittman had in the six parcels of land described in the complaint. *See* 26 U.S.C. § 6321. Notices of such liens were duly and timely filed in the places provided by law. *See* 26 U.S.C. § 6323(a). While Pittman had been the owner of all six parcels of land, legal title to the parcels had been transferred to various nominees. Pittman was experiencing credit difficulties and the purpose of such transfers was to avoid attachment of liens and to facilitate the making of loans with the property as collateral.

The particular dispute before us revolves around certain actions taken by the Government with respect to one of the six parcels, identified as Parcel No. 6. Prior to December 10, 1964, legal title to Parcel No. 6 was in the name of one A. C. Niesen, Jr., as nominee of Pittman. On December 9, 1964, Internal Revenue Service Officer Lyden[2] served a Notice of Levy upon Niesen informing him of Pittman's tax indebtedness and of the fact that a lien had attached to all property belonging to Pittman by virtue of his failure to satisfy the indebtedness upon demand. The Notice of Levy continued:

"* * * you are further notified that all property * * * now in your possession and belonging to this taxpayer * * * [is] hereby levied upon and seized for satisfaction of the aforesaid tax, * * * and demand is hereby made upon you for the amount. * * * Checks or money orders should be made payable to Internal Revenue Service."

On December 10, 1964, Niesen conveyed Parcel No. 6 to the Milwaukee District Director of the Internal Revenue Service by a quitclaim deed delivered to Officer Lyden. The deed was subsequently recorded by another revenue officer.

The Government asserts that the issue before us is the narrow one of whether the receipt of the quitclaim deed constituted an administrative levy. As the factual situation appears to us, while we agree that the question is presented as to whether a levy was made, we cannot accept the narrowing circumscription to the deed transaction alone.

After taking the deed to Parcel No. 6, Revenue Officer Lyden maintained insurance on the property until his retirement on April 30, 1968. It appears, although the record is not entirely clear, that the Service through Lyden solicited tenants for eight houses located on Parcel No. 6 as they became vacant. Lyden testified, "During the period I managed the property, there were some vacancies." It is also clear that the I.R.S. through Lyden served levies on the tenants occupying the houses. Lyden notified the tenants that they should pay their rent to the Internal Revenue Service and to no one else. He collected rents and turned the amounts received over to I.R.S. until his retirement. Pittman asserts he received written notice not to collect any further rent. Lyden testified that he gave no such notice to

---

2. The Internal Revenue Service position of Paul F. Lyden, who worked on collections for the Director of Internal Revenue from 1942 to 1968, is not entirely clear from the record. He signed a Notice of Levy with the title, "Revenue Officer." He is described as "Revenue Agent Lyden" in the Government brief.

In any event, no question has been raised challenging his authority to act in the manner he did, as hereinafter described, and we do not conceive that the Government action in the particular area here involved can only be performed with binding effect by the Secretary of the Treasury.

Pittman but that Pittman did get a copy of the levy. There is evidence that following December 10, 1964, Pittman refused to accept rent from at least one tenant who offered it to him.

It appears from the record that the rental payments, admittedly collected by the Government, were credited to tax liabilities of Pittman. No receipts were introduced into evidence but exhibits marked, "Certificate of Assessments and Payments" would seem to indicate that substantially all of the payments were credited not to Pittman's income tax liability but to his withholding tax (Social Security) liability, an account unrelated to the present dispute.

The Government claims it was seizing only the rentals and not the property itself—the fruit but not the tree. However, their disposition of the fruit would seem to suggest the dispositive right of the owner of the tree. Unless the Government owned the tree, it is difficult to see how it took upon itself diverting the produce to a purpose other than for which it was supposedly taken.

Following December 10, 1964, the property deteriorated. Some of the houses burned down and others were vandalized when they were allowed to remain open and vacant. All but one of them were eventually burned down or condemned by local authorities. Pittman claims that the value of Parcel No. 6 has fallen from over $60,000.00 to approximately $3,000.00.

Some fifteen months after the Service took the deed to Parcel No. 6 and assumed the prerogatives of ownership outlined above, and after much of the deterioration had taken place, the Service through a regional counsel wrote to Pittman advising him that the District Director had taken the deed to the property "to clarify the record title thereof * * * [but] * * * recognizes that you [Pittman] are equitable owner of this real estate." The letter then "recommend[ed] that you take whatever action you deem appropriate to maintain the value of the property and prevent

waste." Transmitted with the letter was a real estate tax bill. The letter noted that the assessed value of the buildings appeared "greatly excessive" and advised Pittman to "take whatever action you deem appropriate."

The letter contained no reference to the control or management that the Government had been theretofore exercising over the property. The two hands of the Government seemed to be quite unaware of the activities of each other. Lyden disclaimed all knowledge of the letter and, as indicated, if the regional counsel was aware of Lyden's activities he refrained from any mention thereof.

Based on these facts, Pittman argues that the Government levied upon Parcel No. 6 and seized it and was then obligated to sell it and apply the proceeds to satisfy his tax liability. *See* 26 U.S.C. § 6342. He contends that the sale of Parcel No. 6 would have produced more than sufficient funds to satisfy and extinguish his liability but that the Service, through a "bureaucratic malfunction," failed to sell the property as required by statute. He asserts that he cannot be penalized for this governmental error over which he had no control.

■ It is clear that a valid and effective levy under Section 6331(a) of the Internal Revenue Code of 1954, 26 U.S. C. § 6331(a), is "an absolute appropriation in law," and a seizure of the property levied upon, tantamount to a transfer of ownership. United States v. Sullivan, 333 F.2d 100, 116 (3d Cir. 1964); United States v. O'Dell, 160 F.2d 304, 307 (6th Cir. 1947); 26 U.S.C. § 6331(b). It would seem beyond dispute that such a seizure to enforce the payment of a tax would violate the Fifth Amendment to the United States Constitution unless the taxpayer were actually given credit against his tax liability for the property so seized. *See* Springer v. United States, 102 U.S. 586, 593–594, 26 L.Ed. 253 (1880). Thus, if there was a valid levy, Pittman is entitled to credit on his tax liability for the seized property.

It is possible to argue that the mere service of a notice of levy, as occurred here, constitutes a levy and seizure of the property of the taxpayer. *See* United States v. Eiland, 223 F.2d 118 (4th Cir. 1955) and United States v. Manufacturers National Bank, 198 F.Supp. 157 (N.D.N.Y.1961).[3] The Notice of Levy itself states that the property is "hereby levied upon *and seized*" and demands its surrender. Where cash is involved, checks are to be made payable directly to the Government.

The Code also supports this position. Section 6331 provides that the tax is to be "collected" by a levy which is defined as a seizure by *any* means. Subsection 6331(c) entitled "Successive *seizures*," in its body authorizes successive *levies*. Under Section 6332(a), any person holding property levied upon is required to surrender possession of it to the Government without further proceedings of any kind. If he does not, he becomes liable for the tax, 26 U.S.C. § 6332(c), while if he does, his liability to the taxpayer is extinguished, 26 U.S.C. § 6332(d), indicating that following the levy it is the property of the Government, and not of the taxpayer. Where real property is levied upon and sold, the Government executes the deed to the purchaser and this deed conveys whatever interest the taxpayer had at the time the Government's lien attached. 26 U.S.C. §§ 6338(b) & 6339(b). Nowhere does the Code indicate any action beyond the levy itself which is necessary to place title in the Government to enable it to so convey it.

Finally, the regulations promulgated pursuant to the Code provide that a levy is made simply "by serving a notice of levy." Federal Tax Regulations, § 301.6331–1(a).

From the above, it would not be difficult to conclude, with the Fourth Circuit, that "the service of such notice [of

levy] results in what is virtually a transfer to the government of the [property levied upon]." *Eiland, supra,* 223 F.2d at 121. However, *Eiland* involved the levy upon an intangible indebtedness rather than upon corporeal property as here and we would hesitate to extend its holding. Such a step is not necessary to the decision of this case.

■ Here, the facts are plain that the Government went well beyond the mere service of a notice levy and actually seized control and dominion over Parcel No. 6. Where the Government serves notice of levy, compels transfer of legal title to itself and exercises the rights of an owner to control property by insuring it, renting it and compelling payment of rent to itself and no one else, so that the taxpayer justly concludes he has no further right to deal with the property, there has been an effective levy and seizure within the meaning of 26 U.S.C. § 6331 and the taxpayer is entitled to credit for the property seized.

Normally, there would be no question of this, for the Code directs that "as soon as practicable" following the levy and seizure of property the taxpayer is to be given notice of the seizure, public notice is to be given of the sale of the property and the property is to be sold not later than 40 days following such public notice. 26 U.S.C. § 6335. The proceeds of such sale, minus certain prior charges, are then to be applied to reduce the tax liability which give rise to the levy. 26 U.S.C. § 6342. Under this procedure there can be no question but that the property has been wrested from the taxpayer and that his liability has been reduced to reflect the seizure.

While the Government effectively gave Pittman notice of the seizure by sending him copies of the levies upon Niesen and the tenants of Parcel No. 6

---

3. With the above cases, *compare* United States v. O'Dell, 160 F.2d 304 (6th Cir. 1947), and Givan v. Cripe, 187 F.2d 225 (7th Cir. 1951), discussing the requirement of service of a warrant of distraint in addition to the notice of levy under pre-1954 Code law. The Government here concedes that the 1954 Code has deleted any reference to such warrants.

stating that the property had been seized and that rents were to be paid only to the Government, it did not follow through and sell the property, as required by the Code. Instead, it held it and permitted it to deteriorate in value. Its letter to Pittman some 15 months later appears to us nothing more than an attempt to cure its error by telling Pittman for the first time that it never intended to seize the property so that Parcel No. 6, in its deteriorated condition, was his problem.

■ We do not conceive that the error of the Government and any loss resulting from it are attributable to the taxpayer. The Government asserts that Pittman testified that he first learned of the transfer to the District Director six months after it was a *fait accompli*. We are not certain what inference the Government desires us to draw from this assertion, assuming it to be true. Pittman, unless unusually careless about his receipts, must have been aware that neither he nor his alter egos were now receiving rental income. In any event, irrespective of when he first became aware of the transfer per se, we do not conceive he was under any duty to institute some type of mandamus proceedings to compel the Code-required sale.

We see no reason for thinking that he would have had much success in stepping in to the picture of property management to prevent deterioration, at least prior to the letter from the regional counsel.

Under such circumstances the taxpayer is entitled to a credit against his tax liability reflecting the value of the property at the time it should have been sold by the Government following its seizure. Because of its conclusion that Parcel No. 6 had not been legally seized, the district court made no findings as to its value.

While Pittman contends that the result we have reached necessarily must be followed by his being entitled to credit in full for his income tax liability plus a refund for an overpayment of some $30,000.00, this position is based upon his contention that there was no evidence contrary to that produced by his expert witness which showed a fair market value of the property as of December 10, 1964 of between $62,500.00 and $65,000.00. We cannot agree. While the Government did not introduce any direct valuative evidence, the record is more than suggestive of a reasonable question of the fair market value of the date involved. The precipitous decline of valuation to approximately $3,000.00 to $5,000.00, in the absence of any showing that the property had been the site of a gang war, itself raises some question of the December 1964 claimed value. The district court by not reaching the valuation question did not decide credibility questions.

■ As the court observed in Jones v. N. V. Nederlandsch-Amerikaansche Stoomvaart M., 374 F.2d 189, 190 (3d Cir. 1966), cert. denied, Holland American Line v. Philadelphia Ceiling & Stevedoring Co., 388 U.S. 911, 87 S.Ct. 2114, 18 L.Ed.2d 1349 (1967), the opinion of an expert, even if uncontradicted, is not required to be accepted as such testimony must pass through the screen of the fact trier's judgment of credibility.

■ We decide upon remand that it will be necessary to have a further hearing to determine (a) the fair market value of Parcel No. 6 as of the time that the property should have been sold pursuant to 26 U.S.C. § 6335 and (b) in the event that value should be in excess of the income tax liability as of that date, who, if anyone, is entitled to make legal claim at this time for the excess credit.

Further, another problem has presented itself to which neither of the parties on appeal as adverted. This arises from the fact that there were two different dates involved in the assessments of income tax liabilities. Notice of and demand for the tax as due were mailed to the taxpayer on the assessment dates. The assessments for the outstanding 1953–57 liabilities were made on Sep-

tember 30, 1960, and for the 1961–64 liabilities on August 5, 1966.

Since the second set of assessments were made more than a year and a half after the levy date, it is not clear from the record before us as to how the 1961–64 liabilities could have been contemplated in a 1964 levy.

The total amount assessed on September 23, 1960, for the years 1953–57 was $29,990.52 and assessed on August 5, 1966, for the years 1961–64 was $4,251.-64. As to the latter figure, it may well develop on remand that other claimants had acquired rights in the property prior to August 5, 1966, unless the Government can show by evidence not now before us that it acquired rights prior to any such claimants.

For the reasons stated, the judgment of the district court is vacated and the cause is remanded for further proceedings not inconsistent herewith.

Vacated and remanded.