In the Matter of **CHICAGOLAND IDEEL CLEANERS, INC., Bankrupt.**

**UNITED STATES of America,**
**Appellant,**

v.

**Craig PHELPS, Receiver in Bankruptcy,**
**Appellee.**

No. 72–1620.

United States Court of Appeals,
Seventh Circuit.

Heard Feb. 13, 1974.

Decided May 7, 1974.

Rehearing Denied May 24, 1974.

Scott P. Crampton, Asst. Atty. Gen.; Karl Schmeidler, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., James R. Thompson, U. S. Atty., Chicago, Ill., for appellant.

Kevin J. Gillogly, Daniel C. Ahern, Chicago, Ill., for appellee.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and STEVENS, Circuit Judges.

CUMMINGS, Circuit Judge.

Taxpayer, Chicagoland Ideel Cleaners, Inc., is an Illinois corporation with its principal place of business in Chicago. On March 12, May 21, May 28, and June 4, 1971, assessments were made against the taxpayer totaling $140,831.59 for withholding and federal unemployment taxes for periods from September 30, 1970, to March 31, 1971. On June 28, 1971, pursuant to the written consents of its directors, taxpayer assigned and transferred all of its assets to Nathan Yorke as assignee for the benefit of its creditors. Thereafter Yorke proceeded to liquidate its assets. On August 25, 1971, the Internal Revenue Service filed in the office of the Recorder of Deeds of Cook County, Illinois, a notice of tax lien with respect to the taxes previously assessed, and on the same date served a notice of levy on assignee Yorke. The notice of tax lien indicated that the $140,831.59 in taxes had been assessed against taxpayer and that after demand for payment, the taxes remained unpaid. The notice of levy stated that the taxpayer's properties "are hereby levied upon and seized for satisfaction" of the taxes.

On September 14, 1971, an involuntary petition for bankruptcy was filed in the court below, and a receiver was appointed ten days thereafter. The taxpayer was adjudged bankrupt on September 28, 1971.

Three weeks thereafter, the receiver filed an application for an order requiring assignee Yorke to turn over all of taxpayer's assets to the receiver. The Government urged that the bankruptcy court lacked summary jurisdiction to grant the application on the ground that possession of the property held by the assignee had been in the United States since August 25, 1971, when it filed its notice of tax lien and served its notice of levy upon assignee Yorke. However, on December 9, 1971, the referee in bankruptcy ruled that assignee Yorke held "inalienable title" to the taxpayer's assets and that the Internal Revenue Service's notice of levy was a "nullity." Therefore, he ordered the assignee to turn over to the receiver all of taxpayer's assets in the assignee's possession. After considering the Government's petition for review of the referee's order, the district court approved the order on January 11, 1972, and reaffirmed its approval on March 2, 1972. We reverse.

■■ Here the four tax assessments against the taxpayer occurred in March, May and June 1971. The notice of tax lien and the notice of levy both recite that the taxes remained unpaid after demand.[1] These notices are regular on their face. Where, as here, the receiver has not come forward with any evidence suggesting that demands were not made, we will accept the recitations in the notices. Therefore, by virtue of Sections 6321 and 6322 of the Internal Revenue Code,[2] the Government's liens arose and attached to taxpayer's property on the dates of assessment and demand. The liens were thereafter valid and perfected against all persons except purchasers, holders of security interests, mechanic's lienors or judgment lien creditors, and

---

1. The demands had to be made within 60 days of the assessments. 26 U.S.C. § 6303(a).

2. Section 6321 provides:

   "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person."

   Section 6322 provides:

   "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed (or a judgment against the taxpayer arising out of such liability) is satisfied or becomes unenforceable by reason of lapse of time."

the liens became effective against those four classes when the notice of tax lien was filed on August 25, 1971. 26 U.S.C. § 6323(a). The receiver does not assert that assignee Yorke is in one of the four protected classes.

■ Under Treasury Regulation § 301.6331–1(a), "Levy may be made by serving a notice of levy * * *." This regulation does not go beyond the authority of the statute, which provides: "The term 'levy' as used in this title includes the power of distraint and seizure *by any means*." 26 U.S.C. § 6331(b) (emphasis supplied). The regulation was implemented by the notice of levy served on assignee Yorke August 25, 1971, which advised him that taxpayer's properties "are hereby levied upon and seized * * *." Thus about three weeks prior to the filing of the bankruptcy petition, the property levied upon was reduced to possession of the United States superior to that of the receiver. See United States v. Pittman, 449 F.2d 623, 627 (7th Cir. 1971); Rosenblum v United States, 300 F.2d 843 (1st Cir. 1962); United States v. Eiland, 223 F.2d 118 (4th Cir. 1955); see also Youngstown S. & T. Co. v. Patterson-E.-C. of Ind., 227 F.Supp. 208, 217 (N.D.Ind. 1963); Consumers Power Co. v. Rubiner, 225 F.Supp. 926, 929 (E.D.Mich. 1963); United States v. Manufacturers National Bank, 198 F.Supp. 157 (N.D. N.Y.1961); In re Venda Manufacturing, Inc., 60–2 U.S. Tax Cas., ¶ 9480 (S.D. Cal.1960).

■ The receiver insists that actual possession is necessary to remove the Government's tax liens from the subordinate priority accorded them under Section 67c(3) of the Bankruptcy Act.[3] However, *Eiland* and *Rosenblum* are squarely to the contrary with respect to intangibles (such as involved here) and we consider them persuasive. As Judges Parker and Woodbury there pointed out, contrary cases relied upon by the present taxpayer dealt either with tangible property or with different language contained in the Internal Revenue Code of 1939 or state tax laws. See Givan v. Cripe, 187 F.2d 225 (7th Cir. 1951); United States v. O'Dell, 160 F.2d 304 (6th Cir. 1947); City of New York v. Hall, 139 F.2d 935 (2d Cir. 1944); see also Division of Labor Law Enforcement v. Goggin, 165 F.2d 155 (9th Cir. 1947), reversed on other grounds, 336 U.S. 118, 69 S.Ct. 469, 93 L.Ed. 543. It is also significant that even *Givan* and *O'Dell* recognized that possession could be either actual or constructive. Those cases contemplated that the levy would be complete when the Government had served a warrant of distraint in addition to its notice of levy. We see no reason why the language necessary to create constructive possession may not be printed in full on one piece of paper. Historically, service of notice has been sufficient to seize a debt. Miller v. United States, 11 Wall. 268, 297, 78 U.S. 268, 297, 20 L.Ed. 135. Finally, Judge Pell's careful discussion in *Pittman* demonstrates that under the Internal Revenue Code, levy is equivalent to seizure and gives the Government full legal rights in the property levied upon. 449 F.2d at 627.

■ Since possession of the property resided in the United States as against

3. Section 67c(3) provides:

"Every tax lien on personal property not accompanied by possession shall be postponed in payment to the debts specified in clauses (1) and (2) of subdivision (a) of section 64 of this title. Where such a tax lien is prior in right to liens indefeasible in bankruptcy, the court shall order payment from the proceeds derived from the sale of the personal property to which the tax lien attaches, less the actual cost of that sale, of an amount not in excess of the tax lien, to the debts specified in clauses (1) and (2) of subdivision (a) of section 64 of this title. If the amount realized from the sale exceeds the total of such debts, after allowing for prior indefeasible liens and the cost of the sale, the excess up to the amount of the difference between the total paid to the debts specified in clauses (1) and (2) of subdivision (a) of section 64 of this title and the amount of the tax lien, is to be paid to the holder of the tax lien." 11 U.S.C.A. § 107(c)(3) (1974 Supp.).

the receiver, the bankruptcy court lacked jurisdiction summarily to adjudicate the controversy without the Government's consent. Cline v. Kaplan, 323 U.S. 97, 99, 65 S.Ct. 67, 89 L.Ed. 558; In re American National Trust, 426 F.2d 1059, 1065 (7th Cir. 1970). The United States is now entitled to have its claim adjudicated in a plenary suit. We respectfully decline to follow the contrary holding in In re United General Wood Products Corp., 483 F.2d 975 (9th Cir. 1973).

The district court's order approving the turnover order is reversed.