UNITED STATES of America, Internal
Revenue Service, Plaintiff,

v.

BARLOWS, INC., Defendant.

Bankruptcy Nos. 82–01506–A,
82–01606–A and 83–00082–A.
Civ. A. No. 84–0173–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 11, 1984.

Dennis Szybala, Asst. U.S. Atty. Alexandria, Va., Gregory S. Hrebiniak, Tax Div., U.S. Dept. of Justice, Washington, D.C., for plaintiff.

Frances P. Dicello, U.S. Trustee, Alexandria, Va., for defendant.

## MEMORANDUM OPINION

CACHERIS, District Judge.

This matter is before the court pursuant to the appeal of the United States from the Bankruptcy Judge's Order of February 8, 1984, 36 B.R. 826 (Bkrtcy.E.D.Va.), in the above styled case. That Order required that appellee Barlows, Inc. ("Barlows") be granted a credit against its outstanding tax liability in the amount of the balance due on an account receivable owed to Barlows by the Western Development Corporation ("Western"). This credit would be less $27,000.00 that the Internal Revenue Service ("IRS") had already applied to Barlows' tax liability in connection with the Western account. The Order additionally required that all interest charged by the IRS after August 16, 1982, on the amount represented by the Western account, be

credited against any interest claimed by the IRS on Barlows' tax liability.

■ The facts are not in dispute, and in fact the parties stipulated to the facts and submitted the matter to the Bankruptcy Judge for adjudication on the briefs and the Stipulation of Facts. Because the parties stipulated to the facts, the Bankruptcy Judge made no factual findings in this case, and there is no need for this court to determine the standard of review which would apply to factual findings. *See 1616 Reminc Ltd. Partnership v. Atchison & Keller,* 704 F.2d 1313 (4th Cir.1983).[1]

The facts, as stipulated, are as follows. Appellee Barlows, Inc. is a construction firm that filed for bankruptcy on November 30, 1982, in the United States Bankruptcy Court for the Eastern District of Virginia. In connection with this bankruptcy application, the United States filed a Proof of Claim against Barlows in the amount of $361,147.99. This Proof of Claim includes assessments for withholding and Federal Insurance Contributions Act ("FICA") taxes for the taxable periods ending March 31, 1982, and June 30, 1982. The IRS properly filed notices of Federal tax liens in connection with these assessments. On July 29, 1982, a notice of Federal tax lien was filed regarding the tax period ending March 31, 1982, indicating an unpaid balance of assessment of $165,988.57. On August 4, 1982, the IRS filed a notice of Federal tax lien regarding the tax period ending June 30, 1982, indicating an unpaid balance of assessment of $152,841.23. In addition, interest has been imposed on all taxes due up to the November 30, 1982, petition date.

It is further agreed by stipulation that, in an attempt to defray its tax liability, Barlows informed the IRS of an outstanding fully-earned account receivable due Barlows from the Western Development Corporation in the amount of $102,544.89. On August 16, 1982, prior to the filing of the bankruptcy petition, the IRS caused a notice of levy to be served upon Western for this account. The IRS also caused notice of seizure of the account to be served on Barlows.

Subsequent to the levy by the IRS on this account, the IRS and Western entered into an installment payment agreement. This agreement was arranged without Barlows' participation. Although the agreement called for Western to pay the entire amount of the account, Western defaulted on the installment agreement after paying only $27,000.00. The IRS credited that $27,000.00 towards Barlows' tax liabilities. Apparently the IRS has not initiated a suit to enforce its levy against Western.

Barlows' contention to the Bankruptcy Judge was that the entire amount of the Western account should be credited against Barlows' tax liability, except for the $27,000.00 previously credited. By entering into an installment agreement with Western, and by not properly advertising and selling the property as required by 26 U.S.C. § 6335 (1982), Barlows contended that the IRS had exercised dominion and control over the property to the exclusion of Barlows, and that the IRS had precluded Barlows from collecting the account itself to help satisfy its tax liabilities. Thus, Barlows maintained, the IRS should bear any loss in value with respect to the property, and the IRS should credit toward Barlows' tax liability the full amount of the account.

Predictably, the IRS did not agree with Barlows' position. The IRS asserted that Barlows was liable for the tax until it was actually paid, and that levy on the property did not release that liability.

The Bankruptcy Judge, commenting that the issue appeared to be one of first impression, held for Barlows. Citing *United States v. Pittman,* 449 F.2d 623 (7th Cir. 1971), the Bankruptcy Judge found that the IRS went well beyond a mere service of

---

**1.** Note that because the facts were stipulated to, this court is reviewing that stipulation on a *de novo* basis, and will make its own judgment as to the applicable law, without regard to what the Bankruptcy Judge determined the law to be. *See* 5 Am.Jur.2d *Appeal and Error* § 825 (1962), *1616 Reminc Ltd. Partnership v. Atchison & Keller,* 704 F.2d 1313 (4th Cir.1983).

levy and that the Service should have advertised and sold the property as required by Section 6335. By levying on the account receivable, and by entering into a payment agreement with Western, the Bankruptcy Judge found that the IRS had precluded Barlows from pursuing the Western account itself in an effort to partially satisfy its tax liability. The Bankruptcy Judge held that because of the IRS's failure to proceed with the sale, because of the IRS's exercise of dominion and control over the property, and because of the IRS's failure to collect the account when Western defaulted on the payment agreement, Barlows should get a credit for the full amount of the account receivable, less the $27,000.00 already credited. In addition, the Bankruptcy Judge granted a credit for interest charged after August 16, 1982, on the amount represented by the amount of the account receivable.

On appeal, the parties advance basically the same arguments propounded to the Bankruptcy Judge. Appellant contends that seized property is only credited to a taxpayer's account when that property is sold or otherwise converted into legal tender. Appellant also contends that seizure of an intangible asset, such as an account receivable, does not constitute payment until collection of the account has been completed. Appellant further contends that *Pittman* is not relevant because that holding is limited to real property which the IRS is required to sell. In the instant case, the property is intangible, and a levy on intangible property, the IRS contends, only gives the IRS a right to receive the value and the taxpayer does not receive a credit until such value is actually received. Appellant asserts that the Bankruptcy Judge's Order crediting Barlows with the entire amount of the account receivable, without regard to Western's willingness or ability to pay, will allow taxpayers to delegate uncollectable accounts receivable to the IRS and then request and receive full credit for those accounts, instantly upon levy by the IRS.

Barlows asserts that it should get a credit for the account receivable (1) because Section 6335 was not complied with, in that there was no advertisement and sale of the property; (2) because of the payment agreement entered into by the IRS and Western, without Barlows' participation; and (3) because the IRS did not enforce the levy against Western despite the fact that Western defaulted on the agreement. Barlows contends that it lost all standing to pursue its account with Western by virtue of the IRS's actions, and therefore, the IRS prevented Barlows from proceeding against the account itself in an effort to defray its tax liability. Thus, Barlows argues, the IRS assumed all risks regarding the Western account.

■ For the following reasons, the judgment of the Bankruptcy Judge is affirmed. Clearly, the IRS exercised more than a notice of levy on the property. By failing to advertise and sell the property as required by Section 6335, and by entering into an installment payment agreement with Western, the IRS exercised dominion and control over the property, to the exclusion of Barlows. By its actions, the IRS precluded Barlows from proceeding against the account itself in an effort to defray its tax liabilities. Section 6332(d) of the Internal Revenue Code divests the delinquent taxpayer of any right against the possessor of property levied upon by the IRS. As such, Barlows was divested of any right to proceed against the Western account once the IRS levied against the account. Had the IRS complied with its statutory obligations under Section 6335 and advertised and sold the property, the amount of Barlows' credit would have been determined by the market place. In addition, Barlows' risk in the Western account would not have been increased, as the market would have determined the value of the account and ended the matter. By failing to comply with the statute, and by entering into the installment payment agreement, the IRS precluded Barlows from pursuing the Western account as partial payment towards the tax liability. In addition, the IRS increased Barlows' risk with regard to the Western account, without Barlows' con-

sent. As such, Barlows should not be held liable for Western's subsequent default.[2] By its actions, which were inconsistent with the statute, the IRS assumed any risk with respect to Western's failure to pay.

The facts of this case are analogous to *Pittman.* As in *Pittman,* the government in the case at bar exercised dominion and control over the property, and precluded Barlows from exercising its rights with respect to the property in an effort to reduce its tax liability. This holding is not inconsistent with *U.S. v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). The relevant portion of *Whiting Pools* holds that property that has been levied upon by the IRS is nonetheless subject to turnover into the reorganized estate of a debtor, despite the fact that the debtor filed for bankruptcy subsequent to the IRS's levy. The Court stated that ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale. In the instant case, actual ownership of the property is not the issue. The fact that under *Whiting Pools* Barlows may have been the true owner of the account, at least for purposes of reorganization, does not preclude the result that the IRS assumed the risk of Western's default when the IRS acted inconsistently with the statute, thereby increasing Barlows' risk in the property and precluding Barlows from proceeding against the account itself.[3]

This court is not persuaded by the government's argument that a holding for Barlows will result in taxpayers delegating uncollectable accounts receivable to the IRS and then requesting and receiving full credit for those accounts instantly upon levy by the IRS. If the IRS follows the statute and sells the property promptly upon levy, the market will determine the amount of credit the taxpayer will receive. It is unclear how the government arrives at

the conclusion that a taxpayer in that situation would request and receive full credit for an account receivable if full value was not what the market determined the value of the account to be. Presumably the IRS could continue to enter into installment payment agreements with possessors of property. The IRS may not, however, hold the taxpayer accountable for a subsequent default by the possessor, absent consent by the taxpayer to the installment agreement.

The government attempts to distinguish the instant case from *Pittman* on the ground that the instant case involves intangible property. It would appear, however, that this is an inconsequential difference. Section 6335 makes no distinction between real property and intangible property.

The government also argues that levy on the property does not release the taxpayer's liability. In the instant case, however, the IRS went far beyond a mere levy on the property. By failing to advertise and sell the property, as required by the statute, and by entering into an installment payment agreement with Western, the IRS precluded Barlows from defraying its tax liabilities by proceeding against the property itself. In addition, the IRS increased Barlows' risk in the property. As such, the IRS assumed any risk that Western would subsequently default on the installment payment agreement. Therefore, the decision of the Bankruptcy Judge will be affirmed with respect to the IRS's liability for the default.

The only remaining question is that of the amount of credit Barlows should receive. That amount should have been determined by the market at the time the IRS levied against the property. But for the IRS's departure from the statutory directives, the market would have determined the value of the account and the corresponding credit Barlows would re-

---

**2.** This increase of Barlows' risk with regard to the Western account is analogous to the rule in suretyship law whereby a creditor who increases a surety's risk, by way of an extension to the principal debtor for example, releases that surety absent the surety's consent to the increased

risk. *See* 74 Am.Jur.2d *Suretyship* §§ 41, 50 (1974).

**3.** It should be noted that *Whiting Pools* did not involve a situation where the IRS had failed to comply with statutory directives.

ceive. Because a market determination did not occur, it is impossible to discern what the value of the property was at the time of the levy. Since the IRS is responsible for the lack of a market determination of the value of the property, in that the Service did not comply with the statute and sell the property promptly, and since the IRS has not shown that the value of the account was anything less than its face value of $102,544.89, Barlows will be credited with the entire amount of the Western account, less the $27,000 already credited.[4]

Because the IRS assumed the risk of nonpayment by Western, thereby entitling Barlows to a credit in the amount of the Western account, a credit for interest charged on the amount of the Western account after August 16, 1982, will also be awarded. Because Barlows should have been credited with the amount of the Western account, Barlows should not have been charged interest on that amount.

An appropriate Order shall issue.

---

4. Note that the government has not argued that if any credit is deemed appropriate, such credit should be less than the face amount of the Western account.