**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IAN MICHAEL STEAD; BELINDA A.
STEAD,
          *Plaintiffs-Appellants,*

          v.

UNITED STATES OF AMERICA,
          *Defendant-Appellee.*

No. 04-35028

D.C. No.
CV-03-05068-RBL

OPINION

Appeal from the United States District Court
for the Western District of Washington
Ronald B. Leighton, District Judge, Presiding

Argued June 10, 2005
Submitted June 29, 2005
Seattle, Washington

Filed August 12, 2005

Before: David R. Thompson, M. Margaret McKeown, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

10561

## COUNSEL

Don M. Running, Seattle, Washington, for the plaintiffs-appellants.

Eileen J. O'Connor, Assistant Attorney General, Thomas J. Clark, Karen G. Gregory, Attorneys, Tax Division, Department of Justice, Washington, DC, for the defendant-appellee.

## OPINION

GOULD, Circuit Judge:

We must decide whether the taxpayer or the government bears the risk of loss when funds on deposit at a bank for practical purposes disappear after being levied upon by the Internal Revenue Service ("IRS") and removed from a taxpayer's bank account. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1346(a)(1), and we hold that, in light of the burden of proof on the taxpayer in a tax refund case, the risk of loss necessarily falls upon the taxpayer.

**I**

In tax year 1994, Plaintiff-Appellant Ian Michael Stead and his former wife, Lynan K. Stead, filed a federal income tax return but underpaid their tax liability by $7,574.31. The IRS issued a notice of balance due on November 13, 1995, and, when the Steads did not respond, issued a notice of intent to levy the Steads' assets on January 22, 1996. Despite these measures, the tax liability remained unsatisfied.

On August 29, 1996, the IRS issued a notice of levy to First Interstate Bank in the amount of $9,023.26 for funds on deposit in an account belonging to From Gifted Hands, Inc., a corporate entity controlled by Ian Michael Stead. On September 4, 1996, First Interstate Bank debited the From Gifted Hands, Inc. account in the amount of $9,023.26. The withdrawal appeared as a "Miscellaneous Debit" on the Steads' monthly statement. Shortly thereafter, First Interstate Bank became a part of Wells Fargo Bank.

Although the levied upon funds were removed from the Steads' account, the final destination of the funds, if in fact they were ever transferred from the bank, is not disclosed by the record. The funds were not returned to the Steads, and the IRS does not have any record of receiving the funds from First Interstate Bank or Wells Fargo Bank. Consequently, on July 21, 1997, the IRS issued a second notice of intent to levy the Steads' property. Ian Michael Stead then inquired with the IRS regarding the first levy and debit from the account at First Interstate Bank. In response, the IRS notified Ian Stead on May 20, 1998 that the government had contacted Wells Fargo Bank and that the bank could not locate any record of the $9,023.26 levy payment. For reasons that are unclear from the record, neither the Steads nor the IRS appears to have attempted to recover the missing funds from First Interstate Bank or Wells Fargo Bank.

On February 1, 2002, Ian Stead and his subsequent wife, Belinda A. Stead, refinanced their home and paid $11,641.01 to the IRS. Upon receipt of this payment, the Steads' tax dispute was resolved to the satisfaction of the IRS, and, on February 8, 2002, the IRS released its tax lien.

On May 30, 2002, the Steads filed an amended 1994 tax return seeking a refund in the amount of $11,679.00 for double payment of their 1994 tax liability. The IRS did not act on the Steads' claim within six months, I.R.C. § 6532(a)(1), and

the Steads then filed a claim for a refund in the United States District Court.[1]

In 2003, the IRS subpoenaed Wells Fargo Bank, but the bank informed the IRS that any records of the September 4, 1996 debit from the Steads' account had been destroyed due to "the retention schedule of the bank." The district court granted summary judgment in favor of the IRS on the ground that the Steads could not bear the burden of proving that the $9,023.26 debited from their account on September 4, 1996 was remitted to the IRS. The Steads appeal.

## II

When a taxpayer fails to pay his or her federal individual income tax, a lien in favor of the government arises by operation of law on the taxpayer's property and rights to property, whether held by the taxpayer or by a third party. I.R.C. § 6321.[2] The government may perfect this lien through one of two procedures: an administrative tax levy pursuant to I.R.C. § 6331, or a lien-foreclosure suit in federal district court pursuant to I.R.C. § 7403. *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985); *Farr v. United States*, 990 F.2d 451, 455-56 (9th Cir. 1993); Treas. Reg. § 301.6331-1(a)(1). When the IRS elects to recover funds though an administrative levy on property in the possession of a third party, the IRS serves a notice of levy on the third party in possession and sends a copy of the notice to the taxpayer. Although legal title to the property remains with the taxpayer for the purposes of administering a bankruptcy estate, *Nat'l Bank of Commerce*, 472 U.S. at 721; *United States v. Whiting Pools, Inc.*, 462 U.S.

---

[1]Although Belinda A. Stead did not file the initial deficient tax return, she has standing to seek a refund as a taxpayer who allegedly overpaid a tax liability to the IRS, even though the tax was assessed against a third party. *United States v. Williams*, 514 U.S. 527, 529 (1995).

[2]Certain types of property are statutorily exempted from a § 6321 tax lien pursuant to I.R.C. § 6323.

198, 210-11 (1983); MICHAEL D. ELLIOTT, FEDERAL TAX COL-
LECTIONS, LIENS, AND LEVIES ¶ 13.05 (2d ed. 1995), service of
the notice of levy "gives the IRS the right to all property lev-
ied upon, and creates a custodial relationship between the per-
son holding the property and the IRS so that the property
comes into the constructive possession of the Government."
*Nat'l Bank of Commerce*, 472 U.S. at 720-21 (internal citation
omitted); *see also Phelps v. United States*, 421 U.S. 330, 334
(1975); *Resolution Trust Corp. v. Gill*, 960 F.2d 336, 340 (3d
Cir. 1992). In the case of funds on deposit in a bank, the tax-
payer loses any right to access or control the funds. Treas.
Reg. § 301.6332-3(c)(3).

Although a person or entity in possession of property sub-
ject to a levy must ordinarily remit the property to the govern-
ment immediately, I.R.C. § 6332(a); Treas. Reg. § 301.6332-
1(a)(1), banks are subject to special rules and must wait
twenty-one days before relinquishing levied upon funds,
I.R.C. § 6332(c); Treas. Reg. § 301.6332-3. Following the
service of notice, a bank has only two defenses: 1) the levied
upon property is not in its possession, and 2) the levied upon
property is subject to prior judicial attachment or execution.
*Nat'l Bank of Commerce*, 472 U.S. at 722; MICHAEL I. SALTZ-
MAN, IRS PRACTICE AND PROCEDURE ¶ 14.17 (2d rev. ed. 2002-
2004). If a bank fails to turn over levied upon funds to the
government without statutory justification, the IRS may bring
suit and hold the bank personally responsible for the lesser of
the value of the property or the amount of the levy, plus costs
and interest, as well as a penalty equal to fifty percent of the
amount thus recoverable. I.R.C. § 6332(d); Treas. Reg.
§ 301.6332-1(b); *see also Melton v. Teachers Ins. & Annuity
Ass'n of Am.*, 114 F.3d 557, 560 (5th Cir. 1997).

## III

**[1]** We turn to the question whether the levy and debit from
the From Gifted Hands, Inc. account satisfied the Steads'

1994 tax liability.[3] The Steads raise their claim in the context of a tax refund suit, and, as a result, they bear the burden of showing that they overpaid their 1994 taxes. *United States v. Janis*, 428 U.S. 433, 440 (1976); *Lewis v. Reynolds*, 284 U.S. 281, 283 (1932). We hold that the Steads have not raised a genuine issue of material fact on an essential element of their claim for alleged overpayment of their 1994 tax liability. Specifically, the Steads failed to show that the August 29, 1996 notice of levy to First Interstate Bank and the September 4, 1996 debit from the Steads' account resulted in the payment of funds from the Steads to the IRS.

**[2]** The record is devoid of evidence that the government took title to or dominion and control over any property owned by the Steads. Contrary to the Steads' assertions, the issuance of a tax levy does not in itself transfer ownership of the levied upon property from the taxpayer to the IRS. *Whiting Pools, Inc.*, 462 U.S. at 211. Rather, the IRS ordinarily does not take title to a levied upon property until the government reaps the proceeds of a tax sale or otherwise collects on the property of the taxpayer. *Id.*; *In re Challenge Air Int'l, Inc.*, 952 F.2d 384, 386-87 (11th Cir. 1992). This framework applies to cash and cash equivalents. *See id.* at 387; *see also Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 21 (1995).

**[3]** Under most circumstances, a tax is "paid" when the government becomes the owner of the property.[4] *Cash v.*

---

[3]We review de novo a district court decision to grant summary judgment. *Abelein v. United States*, 323 F.3d 1210, 1213 (9th Cir. 2003). In conducting our review, we ask whether, taking all reasonable inferences in favor of the nonmoving party, sufficient evidence exists to create a genuine issue of material fact for trial. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[4]Although service of a notice of levy gives the IRS power over the levied property, it does not guarantee that the amount levied upon will flow into the coffers of the United States Treasury. Because property levied upon by the IRS remains subject to the claims of other creditors, *Nat'l Bank of Commerce*, 472 U.S. at 721; *Whiting Pools, Inc.*, 462 U.S. at 210, if we were to hold for the taxpayers in this case, it would permit a taxpayer to establish that he or she had paid a tax even though the government had never collected the tax money owed to it.

*United States*, 961 F.2d 562, 569 (5th Cir. 1992) ("In the ordinary case, the IRS need only ensure that the taxpayer is credited with the amount actually collected on the accounts."); *Sly v. United States*, 836 F.2d 1310, 1312 (11th Cir. 1988); *see also Murphy v. United States*, 45 F.3d 520, 523 (1st Cir. 1995); *Zapara v. Comm'r*, 124 T.C. No. 14 (May 17, 2005) ("[A] taxpayer generally is not entitled to a credit for seized property until it is sold."). Although the Internal Revenue Code does not speak specifically to the issue presented in this case, the Code accords with the reasoning that the government need not credit an amount levied upon against a taxpayer's liability until the government actually collects on the account. I.R.C. § 6343(a)(1)(A) (directing the IRS to release a tax levy, inter alia, if "the liability for which such levy was made is satisfied or becomes unenforceable by reason of lapse of time"); *id.* § 6342 (providing the manner in which the government must apply funds "realized" through a tax levy).

**[4]** Moreover, the remedies available to the IRS under §§ 6331 and 6332 are "analogous to the remedies available to private secured creditors" under Article 9 of the Uniform Commercial Code. *Whiting Pools, Inc.*, 462 U.S. at 210-11; *see also Enos v. Comm'r*, 123 T.C. 284, 297 n.8 (2004). Under U.C.C. section 9-207(b)(2) the risk of loss of property in the possession of a secured creditor remains with the debtor. Although U.C.C. section 9-207(a) provides that a secured creditor in possession shall use reasonable care in serving as custodian of the property, the Steads have pointed to no affirmative negligence on the part of the IRS that might shift the risk of loss to the government.

**[5]** There are situations in which the government exerts such extensive dominion and control over a levied property that it should bear the risk of any loss. *See, e.g.*, *United States v. Pittman*, 449 F.2d 623, 628 (7th Cir. 1971) (holding that a levy constituted payment of tax when the government also took the deed to a property, managed it, and collected rents from tenants); *United States v. Barlow's, Inc.*, 767 F.2d 1098,

1100 (4th Cir. 1985) (per curiam) (holding that the risk of loss transferred when the IRS assumed dominion over a fully earned account receivable and entered into a payment agreement with the debtor); *see also Enos*, 123 T.C. at 299-300. However, the government here did not take any action with respect to the bank account at First Interstate Bank aside from levying upon $9,023.26 held within it. A levy, without more, is not sufficient to transfer the risk of loss to the government. Unless the government takes affirmative action to administer the levied upon property as it did in *Pittman* and *Barlow's, Inc.*, a tax levy does not in and of itself equate to payment of tax liability. *Compare Murphy*, 45 F.3d at 523, *and Cash*, 961 F.2d at 568-69, *with Barlow's, Inc.*, 767 F.2d at 1100, *and Pittman*, 449 F.2d at 628.

## IV

**[6]** The Steads further argue that the levy upon and debit of the funds in their First Interstate Bank account was a taking without just compensation that violated the Fifth Amendment. We reject this argument. The government did not appropriate the funds on deposit at First Interstate Bank for its own use and did not take actual possession of or exert dominion and control over the funds. *Cf. Pittman*, 449 F.2d at 626. The debit of the funds from the Steads' bank account also was not an unconstitutional taking by the government. It was the bank — not the IRS — that debited the Steads' account, and the twenty-one-day holding provision of I.R.C. § 6332(c), designed to protect the taxpayer from unwarranted tax levies, is a reasonable regulation of private property that ensures the continuing flow of revenues into the public fisc.

## V

**[7]** Both parties are to a degree at fault in this unfortunate situation. For their part, the Steads failed timely to pay their full income tax liability for tax year 1994, did not respond to the notice of balance due or to the notice of intent to levy, and

further did not follow up with First Interstate Bank and Wells Fargo Bank to ensure that the funds subject to the tax levy were remitted to the IRS. *See United States v. Triangle Oil*, 277 F.3d 1251, 1256-60 (10th Cir. 2002) (holding that a taxpayer has standing to bring state law claims related to property levied upon by the IRS); *see also* I.R.C. § 6332(e) (granting immunity from suit only to those persons who "surrender[ ] . . . property or rights to property" in actions "arising from such surrender or payment"). On the other hand, for its part, the IRS did not take action against First Interstate Bank to force compliance with the levy or to hold the bank personally liable for the amount of the levy plus penalties pursuant to I.R.C. § 6332(d). Although one might sympathize with the Steads for their loss and one might encourage the IRS to improve its efficiencies in collecting on tax levies, the governing law requires that, to recover in this refund suit, the Steads must demonstrate that they paid to the government more money than they owed on their 1994 tax liability plus penalties. They have not done so.

**AFFIRMED.**