**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MICHAEL A. ZAPARA; GINA A.
ZAPARA,
        *Petitioners-Appellees,*

        v.

COMMISSIONER OF INTERNAL
REVENUE,
        *Respondent-Appellant.*

No. 08-74173

Tax Ct. No.
9480-02L

OPINION

Appeal from a Decision of the
Tax Court

Argued and Submitted
February 17, 2011—San Francisco, California

Filed July 18, 2011

Before: Mary M. Schroeder and Sidney R. Thomas,
Circuit Judges, and Lynn S. Adelman,
District Judge.*

Opinion by Judge Thomas

---

*The Honorable Lynn S. Adelman, District Judge for the U.S. District
Court for Eastern Wisconsin, Milwaukee, sitting by designation.

9691

**COUNSEL**

Nathan J. Hochman, Assistant Attorney General; Gilbert S. Rothenberg, Acting Deputy Assistant Attorney General;

Michael J. Haungs and Steven Parks, Attorneys, Tax Division, Department of Justice; Washington, D.C., for the appellant.

Paul J. Katz, Munger, Tolles & Ollson LLP; San Francisco, California, for the appellees.

## OPINION

THOMAS, Circuit Judge:

This appeal presents the question, *inter alia*, of whether the Tax Court had jurisdiction in a hearing conducted pursuant to 26 U.S.C. § 6330 to review the Internal Revenue Service's failure to comply with its statutory mandate under 26 U.S.C. § 6335(f). We conclude that it did, and we affirm the judgment of the Tax Court.

I

Michael and Gina Zapara owe the IRS over $450,000 for failing to report income derived from a fraudulent check-cashing scheme. To recover these funds, the IRS issued a levy on accounts the Zaparas opened with a securities investment company, into which the Zaparas had deposited approximately $450,000. Because the Zaparas did not use their names to identify the accounts, the IRS believed the Zaparas were attempting to conceal their ownership. The IRS therefore issued a Notice of Jeopardy Levy, as authorized under 26 U.S.C. § 6330(f).

Under the traditional levy process described in § 6330, the IRS may place a levy on taxpayer property, but it must give the taxpayer thirty days notice before imposition of the levy. 26 U.S.C. § 6330(a). Upon receiving this notice, the taxpayer has a right to request a collection due process (CDP) hearing

with the IRS Office of Appeals. *Id.* § 6330(b).[1] Under the jeopardy levy provision, however, the IRS may impose a levy before a hearing if it finds that "collection of tax is in jeopardy." *Id.* § 6330(f). In such a case, the taxpayer must be given the same CDP hearing "within a reasonable period of time after the levy." *Id.* During the CDP hearing, the Appeals Officer must "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." *Id.* § 6330(c)(1). Additionally, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy." *Id.* § 6335(c)(2). Once the hearing has been conducted and the Office of Appeals issues a Notice of Determination, the taxpayer may appeal the determination to the Tax Court. *Id.* § 6330(d)(1).

After receiving notice of the jeopardy levy on their stock accounts, the Zaparas invoked their right to a CDP hearing. During this hearing, they requested that the IRS sell the stock and apply the proceeds to their outstanding tax liabilities. Under 26 U.S.C. § 6335(f), "[t]he owner of any property seized by levy may request that the Secretary sell such property within 60 days after such request . . . ." Once that request has been made, "[t]he Secretary shall comply with such request unless the Secretary determines . . . that such compliance would not be in the best interests of the United States." *Id.* § 6335(f). Without mentioning the Zaparas' request to sell, the Appeals Officer issued a Notice of Determination concluding that the Zaparas were precluded from challenging their underlying tax liabilities and that the jeopardy levy would not be withdrawn. The Zaparas appealed to the Tax Court.

The Tax Court conducted a trial and issued an opinion

---

[1]CDP hearings are typically informal and may simply consist of one or more written or oral communications between an Appeals Officer and the taxpayer or the taxpayer's representative. 26 C.F.R. § 301.6330-1(d)(2) Q&A D-6.

affirming the Notice of Determination on the Zaparas' inability to challenge the underlying tax liability. However, the Tax Court found the IRS had violated § 6335(f) by failing to sell the Zaparas' stock within sixty days. To remedy this violation, the Tax Court ordered the IRS to credit the Zaparas' tax deficiency for the value of the stock sixty days after the sale request. The Tax Court then remanded to the Appeals Office to establish the value of the stock accounts on that date. The IRS moved for reconsideration of the Tax Court's decision, arguing that the Zaparas did not make a sufficient request to sell the stock. The Tax Court denied the motion, concluding that the Zaparas appropriately requested a sale under § 6335(f). Based on the Appeals Office's valuation of the stock sixty days after August 23, 2001, the Tax Court ordered the IRS to credit $47,501.06 against the Zaparas' outstanding tax liabilities. The IRS filed a timely appeal to this court. We review the Tax Court's order *de novo*, *Kelley v. Comm'r*, 45 F.3d 348, 350 (9th Cir. 1995), and we affirm.

II

**[1]** Because the Tax Court is an Article I "court of limited jurisdiction and lacks general equitable powers," *Comm'r v. McCoy*, 484 U.S. 3, 7 (1987) (per curiam), its subject matter jurisdiction is "defined and limited by Title 26 of the United States Code," *Gorospe v. Comm'r*, 451 F.3d 966, 968 (9th Cir. 2006). As such, we must first determine whether Congress authorized the Tax Court to review the IRS's failure during a CDP hearing to comply with its statutory mandate under 26 U.S.C. § 6335(f). The first step in this analysis is to determine "whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997) (internal quotation marks omitted).

**[2]** Section 6330 grants the Tax Court jurisdiction because, barring certain exceptions not relevant here, *see* 26 U.S.C. § 6330(c)(4), it allows the taxpayers to raise "*any relevant*

*issue* relating to the unpaid tax or proposed levy" in the CDP hearing, *id.* § 6330(c)(2)(A) (emphasis added). The IRS focuses on the word "proposed" to argue that taxpayers may not raise issues related to levies that have already been completed. This ignores the unique situation of a jeopardy levy. Under the IRS's reasoning, taxpayers subject to a jeopardy levy would never be able to raise any issue, because the levy will never be merely proposed.

**[3]** A better construction of § 6330 is that the word "proposed" serves only to clarify that the hearing should be about the specific levy at issue, as opposed to a past levy on other property. To be sure, when a jeopardy levy is involved, the levy has always already been imposed. Yet the intent of the statute remains clear: that the hearing address the specific levy in question. As such, the plain language of § 6330 authorizes a taxpayer to raise any relevant issue in a CDP hearing as long as the issue concerns the imposed jeopardy levy.

**[4]** Congressional intent to give the Tax Court jurisdiction to review IRS violations of the Code is also evidenced by the fact that § 6330(c)(1) requires the Appeals Officer to "obtain verification . . . that the requirements of any applicable law or administrative procedure have been met," regardless of whether the taxpayer raises the issue. *Compare id.* § 6330(c)(1) (requiring investigation by Appeals Officer), *with id.* § 6330(c)(2) (listing the issues the taxpayer may raise at the hearing). Because the Appeals Officer's determination is required to take into account § 6330(c)(1)'s verification requirement in addition to any issues raised under § 6330(c)(2), *id.* § 6330(c)(3), and because the Tax Court has jurisdiction over "such determination," *id.* § 6330(d), Congress seemingly intended the Tax Court to review any failure to verify under § 6330(c)(1). *See also* 26 C.F.R. § 301.6330-1(f)(2) Q&A F-3 (explaining that when a taxpayer disagrees with a Notice of Determination, the taxpayer may ask the Tax Court to consider the issues that were properly raised in the CDP hearing).

**[5]** Tax Court review is critical to the jeopardy levy process, which imposes the levy before providing the taxpayers a forum in which to challenge the action. Indeed, the entire purpose behind the creation of the CDP hearing was to provide taxpayers with greater due process to contest the IRS's levy and sale of their property. *See* S. Rep. No. 105-174, at 67 (1998) ("The Committee believes that taxpayers are entitled to protections in dealing with the IRS . . . . Accordingly, the Committee believes that the IRS should afford taxpayers adequate notice of collection activity and a meaningful hearing before the IRS deprives them of their property . . . . [F]ollowing procedures designed to afford taxpayers due process in collections will increase fairness to taxpayers."). As such, the Tax Court had jurisdiction to review the IRS's failure to comply with § 6335(f).

III

**[6]** Tax Courts have "the authority to apply the full range of equitable principles generally granted to courts that possess judicial powers." *Estate of Branson v. Comm'r*, 264 F.3d 904, 908 (9th Cir. 2001); *see also Dixon v. Comm'r*, 316 F.3d 1041, 1047 & n.11 (9th Cir. 2003) (acknowledging Tax Court discretion to fashion an appropriate remedy). The Tax Court properly exercised this authority in ordering the IRS to credit the value of the stock against the Zaparas' outstanding tax liabilities.[2] A similar remedy has been utilized by the Seventh Cir-

_____

[2]The Tax Court's remedy does not violate the doctrine of sovereign immunity. Because § 6330 waives sovereign immunity with respect to any issue relevant to the unpaid tax or proposed levy, the waiver extends "to achieve its remedial purpose" of providing due process for taxpayers whose property is levied on by the IRS. *In re Town & Country Home Nursing Servs., Inc.*, 963 F.2d 1146, 1151 (9th Cir. 1992). Furthermore, as discussed in greater detail below, because this is not a claim for monetary relief, the action is authorized under the Administrative Procedure Act. *See* 5 U.S.C. § 702 ("A person suffering a legal wrong because of agency action . . . is entitled to judicial review thereof. An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed . . . on the ground that it is against the United States . . . .").

cuit and provides support for the Tax Court's action. In *United States v. Pittman*, 449 F.2d 623, 625 (7th Cir. 1971), the IRS imposed a levy on properties owned by Pittman to satisfy Pittman's outstanding tax liabilities. Instead of offsetting Pittman's liabilities by selling the property, the IRS collected the rents from the tenants living on the properties. *Id*. After the property value significantly deteriorated, the IRS asserted that it was seizing "only the rentals and not the property itself—the fruit but not the tree." *Id*. at 626. The *Pittman* court disagreed with this approach, explaining that a levy was a "seizure . . . tantamount to a transfer of ownership," and concluding that "if there was a valid levy, Pittman is entitled to credit on his tax liability for the seized property." *Id.*

The IRS attempts to distinguish *Pittman* by emphasizing that, in Pittman's case, the IRS "went well beyond the mere service of a notice levy and actually seized control and dominion" over the property. *Id.* at 627. However, the "control and dominion" language is not a necessary holding of the decision. The *Pittman* court explained that even if the IRS had not collected rents from the tenants, the IRS was responsible for the decline in value because the Tax Code mandates sale of the property after the levy. *Id*. In Pittman's case, as in the instant case, the IRS "did not follow through and sell the property, as required by the Code. Instead, it held it and permitted it to deteriorate in value." *Id.* at 628. In other words, the *Pittman* court held that by failing to sell the property once it was levied, as required by statute, the IRS assumed the risk that the property would decline in value. *Id.; see also United States v. Barlows, Inc.,* 53 B.R. 986, 989 (E.D. Va. 1984), *aff'd*, 767 F.2d 1098 (4th Cir. 1985) ("By its actions, which were inconsistent with the statute, the IRS assumed any risk with respect to Western's failure to pay.").

**[7]** Certainly, giving notice of an intent to levy under § 6330 does not immediately transfer ownership to the IRS or constitute a payment of outstanding tax liabilities.[3] However,

---

[3]The IRS argues that § 6330 does not authorize the Tax Court to credit a taxpayer's liabilities for the value of property the IRS has not sold

when the IRS acts contrary to its statutory mandate, it assumes the risk of depreciation in the value of levied property. Because § 6335 only mandates sale "as soon as practicable" after a seizure, 26 U.S.C. § 6335(a), the IRS generally does not assume the risk of depreciation if it sells the property as soon as practicable. Here, however, the Zaparas requested a sale of their property under § 6335(f) and the IRS did not comply. It is at that point, when the IRS violated its statutory mandate, that the IRS became responsible for any decrease in stock price. *See Pittman*, 449 F.2d at 628; *Barlows*, 53 B.R. at 989. Violation of a statutory mandate is the crucial factor that also distinguishes the other cases relied upon by the IRS. *See, e.g., Stead v. United States*, 419 F.3d 944, 948 (9th Cir. 2005) (determining that the taxpayer had "pointed to no affirmative negligence on the part of the IRS that might shift the risk of loss to the government"); *Cash v. United States*, 961 F.2d 562, 596 (5th Cir. 1992) (finding that the IRS's failure to collect the levied accounts receivable did not shift the risk of loss because "[n]o statute or case law imposes such a requirement").

**[8]** Finally, the Tax Court correctly concluded that 26 U.S.C. § 7433, which provides "the exclusive remedy for recovering damages" resulting from violations of the Code did not preempt the specific remedy imposed in this case. The resolution of this issue requires defining what is meant by "damages" in the context of § 7433. We agree with the Tax Court that damages refers to compensatory damages, which

---

because a tax must be paid in money, not by an in-kind transfer of property. This argument misses the point. The IRS is not being asked to accept the *stock* as payment, but instead the monetary value of the stock on the date it should have been sold. Such a form of payment—transferring personal property into cash in order to pay tax liabilities—is not only allowed, the levy process specifically contemplates and authorizes such an arrangement. Even though the stock no longer holds the monetary value it once did, the IRS assumed this loss, and the reduction in value does not change the payment into a transfer in-kind.

substitute for a plaintiff's loss, as opposed to specific reme-dies, which give the plaintiff exactly what he should have received. *See Bowen v. Massachusetts*, 487 U.S. 879, 895 (1988) ("Damages are given to the plaintiff to *substitute* for a suffered loss, whereas specific remedies are not substitute remedies at all, but attempt to give the plaintiff the very thing to which he was entitled." (internal quotation marks and cita-tions omitted)).

In this context, the IRS's reliance on *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) is inappo-site. Unlike *Bowen*, in which the Court analyzed the meaning of the phrase "money damages",[4] the *Great-West* Court ana-lyzed the meaning of the phrase "equitable relief."[5] This vary-ing language was critical to the *Great-West* Court's decision. *See Great-West*, 534 U.S. at 212; *see also Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999) ("*Bowen's* interpre-tation of § 702 . . . hinged on the distinction between specific relief and substitute relief, not between equitable and none-quitable categories of remedies.").

**[9]** Here, as in *Bowen*, the relief granted by the Tax Court was a specific remedy because it does the very thing required by § 6342: reducing the Zaparas' outstanding tax liabilities by the value of the levied stock accounts. *See* 26 U.S.C. § 6342.

---

[4]The specific issue in *Bowen* was whether the reimbursement of Medic-aid funds constituted "money damages" under § 702 of the APA. *See* 5 U.S.C. § 702 ("An action in a court of the United States seeking relief other than money damages . . . shall not be dismissed nor relief therein be denied on the ground that it is against the United States . . . .").

[5]The specific issue in *Great-West* was whether § 502(a)(3)(B) of ERISA, which authorizes actions to obtain "appropriate equitable relief," allows a suit to recover payment of money due under a contract. *See* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.").

As such, the award does not constitute "damages" as used in § 7433.

### IV

The Tax Court had jurisdiction under 26 U.S.C. § 6330 to review the IRS's failure during a CDP hearing to comply with its mandate under 26 U.S.C. § 6335(f). When the IRS violated its statutory mandate, it assumed the risk of devaluation in the levied property, and the Tax Court appropriately ordered it to credit the Zaparas' outstanding tax liabilities. Because this relief was a specific remedy, 26 U.S.C. § 7433 does not pre-empt the award.

**AFFIRMED.**