123 T.C. No. 17

UNITED STATES TAX COURT

JOSEPH F. AND CAROLINE ENOS, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11630-01L.          Filed September 27, 2004.

R assessed income tax, interest, and civil fraud
liabilities for Ps' 1971 tax year.  Ps were involved in
the scrap metal business and had a substantial account
receivable from Ps' customer M.  R issued to M a notice
of levy on the account receivable.  R and M entered
into a payment agreement, whereby M would make 200
weekly payments of $1,500 to R.  Ps were aware of and
participated in the negotiation of the payment
agreement between M and R.  Ps continued to do business
with M and received large payments from M before M was
placed in bankruptcy.  R filed an original and several
amended proofs of claim in M's bankruptcy case,
relating to the notice of levy.  The bankruptcy court
held that R did not have to marshal Ps' assets before
seeking M's assets in bankruptcy court.  R issued Ps a
notice of determination to proceed with collection of
Ps' 1971 liabilities for accrued interest on Ps' 1971
tax liabilities pursuant to sec. 6330, I.R.C.  R
determined that collection should proceed because R
never had "dominion and control" over the account

receivable because M continued to make payments to Ps after R issued M the notice of levy and Ps participated in the negotiation of the payment agreement with M. <u>Held</u>: Ps' liability to R was not satisfied when R issued M the notice of levy because it only provided R with legal custody of Ps' account receivable from M. <u>Held</u>, <u>further</u>, R did not have "dominion and control" over the account receivable from M to Ps. <u>Held</u>, <u>further</u>, the notice of determination relates only to Ps' 1971 tax year, and the Court does not have jurisdiction over Ps' 1970 and 1972 tax years. <u>Held</u>, <u>further</u>, res judicata does not apply to the instant case. <u>Held</u>, <u>further</u>, collateral estoppel does not apply to the instant case. <u>Held</u>, <u>further</u>, the Court does not have jurisdiction to determine whether M's bankruptcy trustee is liable for penalties under 31 U.S.C. secs. 191 and 192 (2000) and secs. 6331 and 6332, I.R.C. <u>Held</u>, <u>further</u>, petitioners are not entitled to an abatement of interest because a significant aspect of any error or delay is attributable to petitioners.


<u>Hans A. Stoeckler</u>, for petitioners.

<u>D. Sean McMahon</u>, for respondent.


OPINION


WELLS, <u>Judge</u>: The petition in the instant case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination).[1] In the notice of determination, respondent determined that collection should proceed against petitioners to

---

[1]All section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

collect a liability for accrued interest on petitioners' tax liabilities for 1971.

The issues to be decided are as follows:

1. Whether respondent's issuance of a notice of levy on an account receivable due petitioners from a customer satisfied petitioners' original tax liability for 1971 that was assessed in 1977 because respondent exercised "dominion and control" over the account receivable;

2. whether we have jurisdiction over petitioners' 1970 and 1972 tax years;

3. whether res judicata applies to the instant case;

4. whether collateral estoppel applies to the instant case;

5. whether the bankruptcy trustee of petitioners' customer is personally liable to respondent under 31 U.S.C. secs. 191 and 192 (2000) and sections 6331 and 6332 for wrongfully refusing to surrender the customer's property to respondent; and

6. whether petitioners are entitled to an abatement of interest accruing for their 1971 tax year pursuant to section 6404.

## Background

The parties submitted the instant case fully stipulated, without trial, pursuant to Rule 122. The parties' stipulations of fact are hereby incorporated by this reference and are found

as facts in the instant case.  At the time petitioners filed their petition, they resided in Taunton, Massachusetts.

During the 1970s, petitioners operated Joseph Enos & Sons (Enos & Sons) and were engaged in the scrap metal business in Massachusetts.  Petitioners routinely sold scrap metals to Metropolitan Metals, Inc. (MMI), of Harrisburg, Pennsylvania, from whom petitioners had a significant account receivable for scrap metal purchased by MMI (account receivable).

Petitioners made estimated tax payments of $1,753.51 for their 1971 tax year.  Respondent conducted an audit of petitioners' 1971 tax year.  On November 14, 1977, respondent assessed $164,886.76 in liabilities for 1971, comprising an income tax liability of $88,156.02, an addition to tax for fraud of $44,078.01 relating to certain cash transactions, and interest of $32,652.73.  Petitioners did not dispute the liabilities assessed against them for 1971.

On August 15, 1978, in an attempt to collect payments on petitioners' 1970, 1971, and 1972 tax liabilities, respondent issued MMI a notice of levy (August 15, 1978, notice of levy), seizing the account receivable.  When respondent issued MMI the August 15, 1978, notice of levy, MMI was experiencing financial problems.  The August 15, 1978, notice of levy informed MMI that it owed respondent $310,333.58, of which $159,476.08 was for petitioners' 1971 tax year.  The August 15, 1978, notice of levy

also indicated that the amounts due for petitioners' 1970 and 1972 tax years were $64,167.11 and $86,690.39, respectively.

On December 15, 1978, MMI's counsel sent respondent a letter which stated that MMI would make 200 weekly installment payments of $1,500 to respondent in satisfaction of the levy served on MMI (December 15, 1978, payment agreement). The December 15, 1978, payment agreement was sent from MMI's counsel, Bruce D. Forman, Esq., to respondent's Revenue Officer Charles J. Hillsdale and stated the following:

> I am writing to confirm my understanding of our conversation of December 13 and to put it in writing for purposes of specific explanation to my client.

> Commencing Friday, December 19, 1978, and every Friday thereafter, Metropolitan Metals will forward to the Internal Revenue Service in self-addressed stamped envelopes to be provided by the Internal Revenue Service to me, payment in the amount of $1,500.00 for your levy on an account due and payable from Metropolitan Metals, Inc. to Joseph F. and Carol P. Enos, the same having been served on Metropolitan Metals August 15, 1978.

> It has been agreed that the outstanding account payable is in the amount of $300,000.00 and, accordingly, at this rate of payment it would take 200 weeks to make all of the payments required. Mr. Roberts, President of Metropolitan Metals, Inc., has agreed to inform me if business profits permit increase payments and, at that time I would contact you so that we could increase the rate of payment to decrease the time during which payment would be made.

> I appreciate the fact that you are cooperating with us so that this account can be paid in a manner consistent with continuing business and at the same time, allowing the government to collect the amount due.

MMI sent respondent seven checks for payment pursuant to the December 15, 1978, payment agreement. Only six of those checks were honored.

On March 29, 1979, MMI's creditors filed an involuntary bankruptcy petition against MMI in the U.S. Bankruptcy Court for the Middle District of Pennsylvania. MMI's bankruptcy petition was filed under chapter 11 of the Bankruptcy Act of 1898 (Bankruptcy Act), as amended. MMI's case was later converted to a chapter 7 case.

On April 25, 1979, Charles J. DeHart III, Esq., was appointed receiver of MMI.

On May 21, 1980, respondent issued Mr. DeHart a notice of levy (1980 notice of levy). The 1980 notice of levy indicated a total liability of $246,789.26, composed of a liability for 1971 of $153,002.11, and a liability for 1972 of $93,787.15.

On June 10, 1981, respondent filed an amended proof of claim, claim 134 (amended proof of claim), pursuant to a priority claim under section 64a(5),[2] based on the August 15, 1978, notice of levy and the December 15, 1978, payment agreement, in the amount of $232,427.35. The amended proof of claim stated that interest would accrue at a rate of $45.55 per day.

---

[2]MMI's bankruptcy case was filed under the Bankruptcy Act of 1898. However, the amended proof of claim does not indicate whether sec. 64a(5) relates to the Bankruptcy Act of 1898.

On June 24, 1981, the U.S. Bankruptcy Court for the Middle District of Pennsylvania issued an order of adjudication, ordering MMI's case to proceed under the provisions of the Bankruptcy Act, appointing Mr. DeHart to the position of trustee for MMI (bankruptcy trustee), and setting the amount of the bond of the bankruptcy trustee at $100,000.

On May 12, 1982, respondent filed a second amended proof of claim for internal revenue taxes, claim 173 (1982 proof of claim) in the U.S. Bankruptcy Court for the Middle District of Pennsylvania. Respondent's 1982 proof of claim stated that respondent had a priority claim under section 64a(5) based on the August 15, 1978, notice of levy and the December 15, 1978, payment agreement. The 1982 proof of claim also stated that interest would accrue on the $248,710.95 due under the 1982 proof of claim from MMI at a rate of $72.77 per day.

On April 5, 1989, respondent filed another amended proof of claim with the U.S. Bankruptcy Court for the Middle District of Pennsylvania, claim 175, claiming an amount due from MMI in the amount of $149,321.40.

On January 24, 1990, petitioners filed a complaint against respondent in the U.S. District Court for the District of Massachusetts, Civil Action No. 90-10178-WAG. Petitioners sought to have respondent remove certain tax liens on their property, relating to the tax liabilities from their 1971 and 1972 tax

years.  Petitioners also sought $10 million in damages from respondent.

On November 22 and 27, 1991, a deposition (deposition) was given by petitioner Joseph F. Enos (Mr. Enos), relating to the lawsuit petitioners filed in the U.S. District Court for the District of Massachusetts, Civil Action No. 90-10178-WAG.  During the deposition, George Eliopoulos, Esq., of the U.S. Department of Justice, Tax Division, represented the United States, and David Shaughnessy, Esq., represented Mr. Enos.

During the deposition, Mr. Enos discussed certain events surrounding the August 15, 1978, notice of levy that was issued to MMI.  Mr. Enos also discussed the nature of petitioners' business relationship with MMI.

Mr. Enos indicated that petitioners' business had sales in the millions of dollars during the 1970s.  Mr. Enos also stated that MMI was petitioners' largest purchaser of scrap metal, accounting for over 50 percent of their business during the period in issue.  Mr. Enos stated that petitioners kept an "Accounts Receivable Ledger" for their business (petitioners' business ledger), which reflected, in part, certain transactions with MMI, from August 1977 until February 1979.

A letter from James S. Newell, C.P.A., Mr. Enos's accountant, dated February 15, 1978, to Mr. Hillsdale states: "Enclosed herewith please find the personal and business

financial statements for Joseph and Caroline Enos, 18 Marvel Street, Taunton.  In addition I have enclosed a power of attorney signed by both individuals."

The February 15, 1978, letter from Mr. Newell to Mr. Hillsdale referred to a financial statement accompanying the February 15, 1978, letter.  Petitioners' balance sheet for their business shows that petitioners had accounts receivable of $496,410, and that petitioners subtracted an uncollectible amount of $393,466, for a total value of $102,944.  A note to the balance sheet states:

> NOTE--THE ALLOWANCE FOR UNCOLLECTIBLE ACCOUNTS
> REPRESENTS THE AMOUNT DUE FROM METROPOLITAN METALS,
> INC. OF HARRISBURG, PENNSYLVANIA.  THE OWNER OF THE
> BUSINESS SUPPOSEDLY HAS BEEN THROUGH SEVERAL
> BANKRUPTCIES.  THE BALANCE REPRESENTS AMOUNTS DUE FOR A
> PERIOD LONGER THAN 6 MONTHS, AND THE COMPANY HAS SHOWN
> A CONTINUED POLICY OF ISSUING CHECKS WHICH SUBSEQUENTLY
> ARE RETURNED BY HIS BANK AS "INSUFFICIENT FUNDS".
> PROSPECTS OF COLLECTING THIS [sic] APPEAR SLIM.

Petitioners' Statement of Financial Condition and Other Information, dated June 20, 1978, under the heading "Accounts Receivable", states:

| Account Receivable | Book Value | Liquidation Value |
|---|---|---|
| Trade, at 12/31/77 | $496,410 | $102,944* |

*One Customer owes $393,466, Collection Appears Slim.

Mr. Enos signed the financial statements for the purpose of settling petitioners' tax liability with respondent.

Mr. Enos knew MMI had agreed to make payments to respondent for the satisfaction of petitioners' tax liability to respondent. Mr. Enos believed that the account receivable had a value different from the $300,000 that was agreed to in the December 15, 1978, payment agreement.

Petitioners received money from MMI after the August 15, 1978, notice of levy was issued to MMI for the part of the account receivable that exceeded the amount of the August 15, 1978, notice of levy.

In respondent's record of petitioners' account, a Form 2-27, TDA[3] (Taxpayer Delinquent Account) History Record form for the period from January 1, 1978, to July 2, 1981, the October 23, 1978, entry states that petitioners' counsel advised respondent that petitioners were meeting with representatives of MMI in Harrisburg, Pennsylvania, to resolve the amount owed by MMI to petitioners. Respondent's October 31, 1978, TDA entry states that petitioners informed respondent that petitioners and MMI did not agree as to the amount of MMI's liability to petitioners. That entry also states that MMI provided petitioners with their records so that MMI and petitioners could agree on a figure for the account receivable. Respondent's November 3, 1978, TDA entry states that MMI's attorney, Mr. Forman, was contacted by

---

[3]Coggin v. Commissioner, T.C. Memo. 1993-209, affd. 71 F.3d 855 (11th Cir. 1996), describes the function of TDAs.

respondent on November 3, 1978, and indicated that MMI and petitioners were still discussing the amount of the account receivable.

Respondent's December 12, 1978, TDA entry states that MMI's counsel indicated that MMI could pay respondent $1,500 weekly on the August 15, 1978, notice of levy. Respondent's December 12, 1978, TDA entry also states that MMI and petitioners agreed that the amount MMI owed petitioners was $300,000. Additionally, respondent's December 12, 1978, TDA entry states that petitioners informed respondent that they were going to try to have MMI pay $3,000 weekly to satisfy the August 15, 1978, notice of levy.

A letter dated September 26, 1991, from Mr. Enos's attorney, Mr. Shaughnessy, to Edward Rothman, Esq., who represented MMI, states: "Enclosed please find the documents discussed in our last telephone conversation." Attached to the September 26, 1991, letter is MMI's incomplete ledger of petitioners' account with MMI (MMI business ledger). Entries on MMI's business ledger state: "2 accounts for Joe Enos 1500 ea week" and "Joseph Enos 2A P.O. Box 949 Taunton, Mass. 02780". One page of MMI's business ledger indicates that MMI debited petitioners' account by $10,500, and all the debits were in the amount of $1,500. One of the $1,500 payments was entered as a credit on MMI's business ledger. Four of the entries state "J. Enos & Sons (IRS)". Mr. Enos also stated that "He put my name on his and vice versa",

which describes both petitioners' business ledger reflecting an account receivable with MMI and MMI's business ledger reflecting an account with petitioners.

In addition to the first account in MMI's business ledger that recorded MMI's payments to respondent, MMI's business ledger describes certain business transactions with petitioners. MMI's business ledger covers a period from November 1978 to February 1979, and during that period, MMI debited petitioners' account by approximately $340,000 and credited their account by approximately $420,000.

Petitioners' business ledger reflects MMI's account with petitioners. Mr. Enos identified credit entries on petitioners' business ledger that corresponded to the MMI payment invoices presented to him by the United States during the deposition. The following table describes when MMI picked up the materials from petitioners, the MMI invoice number for each shipment referred to on MMI's payment invoices, the check number for the check MMI used to pay for the shipment, the amount paid to petitioners, and the payment date.

| Delivery date 1977 | Invoice No. | Check No.[1] | Payment | Payment date 1978 |
|---|---|---|---|---|
| 2/23 | 306 | 517 | $2,500 | 8/18 |
| 2/23 | 306 | 519 | 2,500 | 8/18 |
| 2/23 | 306 | 565 | 2,500 | 8/22 |
| 2/23 | 306 | 607 | 2,500 | 8/23 |
| 4/14 | 419 | 752 | 2,500 | 9/1 |
| 4/14 | 419 | 750 | 2,500 | 9/1 |
| 4/14 | 419 | 728 | 5,000 | 8/31 |

| 4/14 | 419 | 714 | 2,500 | 8/30 |
| 4/14 | 419 | 672 | 2,500 | 8/28 |
| 4/14 | 419 | 648 | 2,500 | 8/25 |
| 7/19 | 47 | 940 | 3,000 | 9/15 |
| 7/19 | 47 | 942 | 3,000 | 9/15 |
| 7/19 | 47 | 988 | 2,500 | 9/19 |
| 9/19 | 47 | 1022 | 2,500 | 9/21 |
| 6/29 | 37 | 780 | 2,000 | 9/5 |
| 6/24 | 37 | 824 | 2,500 | 9/7 |
| 6/29 | 37 | 842 | 2,500 | 9/8 |
| 6/29 | 37 | 844 | 2,500 | 9/8 |
| 6/29 | 37 | 902 | 2,500 | 9/13 |

[1]The check number on each check corresponds to an inscription in petitioners' business ledger, under the "detail" section of that record.

Moreover, petitioners' business ledger indicates that there were a number of payments from MMI to petitioners that were made on or after August 15, 1978. Petitioners' business ledger indicates that petitioners credited MMI's account with over $800,000 after the August 15, 1978, notice of levy was served on MMI, of which approximately $210,000 was purportedly paid to petitioners on or after December 15, 1978. Along with the numerous credits on MMI's account, there appear to be numerous debits on MMI's account in petitioners' business ledger indicating that petitioners debited over $870,000 from MMI's account.

Respondent's April 30, 1979, TDA entry states that petitioners knew that as of April 30, 1979, MMI was no longer making payments to respondent on the August 15, 1978, notice of levy. Moreover, respondent's April 30, 1979, TDA entry indicates that respondent was also seeking to satisfy petitioners' tax

liability with assets other than the MMI account receivable. Respondent's May 10, 1979, TDA entry indicates that petitioners were going to sell several parcels of real estate to pay part of their tax liability.  Respondent's July 10, 1979, TDA entry indicates that petitioners' account at Bay Bank was levied upon.

On June 13, 1994, respondent issued notices of levy to a number of institutions in an effort to collect $730,729.67 in total liabilities from petitioners, $327,772.29 for 1971 and $402,957.38 for 1972.  Of the $327,772.29 liability for 1971, $35,705.42 was for unpaid tax liability and $292,066.87 was for accrued interest and penalties.  The levies were placed on petitioners' accounts at Bridgewater Credit Union, in Bridgewater, Massachusetts; Prudential Ins. Co. of America in Newark, New Jersey; Shawmut Bank. N.A. in Boston, Massachusetts; Baybank South in Westwood, Massachusetts; John Hancock Mutual in Boston, Massachusetts; Bristol County Savings Bank in Taunton, Massachusetts; Kidder Peabody Premium Acct. Fund in New York, New York; and Kidder Peabody & Co., Inc., in New York, New York. Respondent collected $87 from Shawmut Bank.

On September 15, 1994, respondent issued petitioners a notice of seizure of real estate located at 19 Dana Street in Taunton, Massachusetts, for a liability of $703,918.30.  Also on September 15, 1994, respondent issued petitioners a notice of seizure for five additional parcels of real estate located on

Dana Street in Taunton, Massachusetts.  On September 29, 1994, respondent issued petitioners a notice of seizure for real estate located on Beach Street in Wareham, Massachusetts.

On September 26, 1994, the U.S. District Court for the District of Massachusetts dismissed petitioners' claims in Civil Action No. 90-10178-WAG by granting the Government's motion to dismiss for failure to state a claim on which relief can be granted and, alternatively, motion for summary judgment for petitioners' failure to present sufficient evidence for actual direct economic damages.

On October 4, 1994, respondent sent petitioners a notice of release of levy relating to six parcels of land on Dana Street in Taunton, Massachusetts, and one parcel of land on Beach Street in Wareham, Massachusetts.

On December 1, 1999, the U.S. Bankruptcy Court for the Middle District of Pennsylvania issued an order for final distribution for MMI's bankruptcy estate.

On February 7, 2000, respondent issued petitioners a Final Notice--Notice of Intent to Levy and Notice of Your Right to A Hearing for petitioners' 1971 tax year, which indicated that petitioners owed $34,382.77 of the original liability and $447,022.46 in interest for a total liability of $481,405.23.

On March 2, 2000, petitioners sent respondent a request for a section 6330 hearing.  In their section 6330 hearing request,

petitioners asserted: "All tax liability was paid on August 15, 1978 by means of levy against Metropolitan Metals, Inc. and an Agreement to pay levy. Claim for total tax liability was made in Bankruptcy Case 79-318, Middle District of Pennsylvania in 1981."

On March 8, 2000, the bankruptcy trustee sent respondent a check for $149,312.40 for claims 134 and 175. The check was endorsed "For deposit only" by the U.S. Department of Justice and paid on March 21, 2000.

On March 17, 2000, respondent received payment of $149,312.40 for petitioners' 1971 tax liability; $34,382.77 of the payment was used to satisfy the remaining 1971 tax liability, and the additional $114,929.63 was used to pay part of the accrued interest.

On August 14, 2001, respondent issued petitioners the notice of determination for their 1971 tax year. The Appeals Officer determined:

> It is determined that the liability was the result of
> an examination of your personal income tax returns for
> the period. You executed an agreement at the
> Examination level agreeing to the liability. Under
> Section 6330 of the Internal Revenue Code the
> underlying liability may be challenged only if you did
> not receive a Statutory Notice of Deficiency or had no
> other opportunity to Appeal the liability. As part of
> the examination process, you were explained your appeal
> rights. You chose to execute an agreement with the
> Examination Division. Accordingly, the underlying
> liability may not be argued at the Collection Due
> Process Hearing.
>
> * * * The facts indicate that after the Service levied
> the receivable with MMI you continued to negotiate with

MMI regarding its payment to the Internal Revenue Service. It is noted that there are documents in the file indicating that you received payment on the account receivable of MMI subsequent to the levy. Accordingly, it is my determination that you have not proven that the service exercised "dominion and control" over the MMI receivable.

### Discussion

Petitioners, relying on United States v. Eiland, 223 F.2d 118 (4th Cir. 1955), contend that the August 15, 1978, notice of levy issued to MMI before MMI's involuntary bankruptcy had the effect of an immediate seizure by the United States of the account receivable. Petitioners contend that, under Eiland, respondent's notice of levy on the account receivable, an intangible asset, had the effect of transferring to respondent the amount necessary to pay petitioners' tax liability. Moreover, petitioners contend that the August 15, 1978, notice of levy provided respondent with possession of the account receivable, which satisfied petitioners' tax liability in whole. Petitioners rely on Phelps v. United States, 421 U.S. 330 (1975); In re Pittsburgh Penguins Partners, 598 F.2d 1299 (3d Cir. 1979); In re Cherry Valley Homes, Inc., 255 F.2d 706 (3d Cir. 1958); and United States v. Eiland, supra, arguing that, because these cases arose under the Bankruptcy Act of 1898, they should be controlling. Additionally, petitioners contend that the August 15, 1978, notice of levy transferred ownership under section 6331

and that petitioners had no recourse against MMI because section 6332(d) precluded petitioners from seeking recourse against MMI.

Respondent contends that the seizure of intangible property by levy does not constitute a transfer of ownership, relying on United States v. Whiting Pools, Inc., 462 U.S. 198 (1983), and Murphy v. United States, 45 F.3d 520 (1st Cir. 1995).[4]  Respondent contends that the tax liability is not paid until the account receivable is either collected or sold, relying on Whiting Pools, Inc. and Cash v. United States, 961 F.2d 562 (5th Cir. 1992). Respondent contends that the levy on MMI had the effect of making respondent an involuntary assignee of petitioners, relying on In re Quakertown Shopping Ctr., Inc., 366 F.2d 95 (3d Cir. 1966).

Accounts receivable are subject to levy.  See sec. 301.6331-1(a)(1), Proced. & Admin. Regs.  A levy is effective when the notice of levy is served on a third party.  See id.  Section 301.6331-1(a)(1), Proced. & Admin. Regs., provides that "a levy extends only to property possessed and obligations which exist at the time of the levy."

In Phelps v. United States, supra at 336-337, the Supreme Court decided that the bankruptcy court below lacked summary jurisdiction under the Bankruptcy Act over an account receivable

_____

[4]In the instant case, respondent is not seeking to collect petitioners' 1971 tax liability that was assessed in 1977 and finally satisfied by the distribution from MMI's bankruptcy trustee in March 2000.  Rather, respondent is seeking to collect the interest that accrued on that tax liability after it was assessed in 1977.

of a third party, upon which the Commissioner had levied to satisfy a tax liability of the taxpayer before the taxpayer sought bankruptcy protection.  In <u>Phelps v. United States</u>, <u>supra</u> at 377, the Supreme Court stated in dictum[5] that "The levy, therefore, gave the United States full legal right to the $38,000 levied upon as against the claim of the petitioner receiver." In <u>In re Pittsburgh Penguins Partners</u>, <u>supra</u> at 1302, the Court of Appeals for the Third Circuit, applying <u>Phelps</u>, held that a levy deprived the bankruptcy court of summary jurisdiction over a bank account and observed that the Court of Appeals did not need to decide whether the levy transferred full title to the bank account to the Commissioner.

We disagree with petitioners' contention that <u>Phelps v. United States</u>, <u>supra</u>, controls the outcome of the instant case. In <u>Phelps</u>, the Supreme Court decided whether the bankruptcy court had summary jurisdiction over an intangible, not whether the levy satisfied the liability to the Commissioner.

---

[5]See <u>United States v. Whiting Pools, Inc.</u>, 462 U.S. 198, 210 n.18 (1983).

In <u>United States v. Whiting Pools, Inc.</u>, <u>supra</u>,[6] a bankruptcy case brought under the Bankruptcy Code of 1978 (Bankruptcy Code), the Supreme Court addressed the question of whether the issuance of a notice of levy to a third party satisfies a taxpayer's liability.  The Supreme Court stated:

> Under the old Bankruptcy Act, a bankruptcy court's summary jurisdiction over a debtor's property was limited to property in the debtor's possession when the liquidation was filed.  <u>Phelps v. United States</u>, 421 U.S. 330, 335-336 (1975); <u>Taubel-Scott-Kitzmiller Co. v. Fox</u>, 264 U.S. 426, 432-434 (1924).  <u>Phelps</u>, which involved a liquidation petition under the prior Bankruptcy Act, held that a bankruptcy court lacked jurisdiction to direct the Service to turn over property which had been levied on and which, at time of the commencement of bankruptcy proceedings, was in the possession of an assignee of the debtor's creditors.

> <u>Phelps</u> does not control this case.  First, the new Bankruptcy Code abolished the distinction between summary and plenary jurisdiction, thus expanding the jurisdiction of bankruptcy courts beyond the possession limitation.  H.R. Rep. No. 95-595, pp. 48-40 (1977); see <u>Northern Pipeline Construction Co. v. Marathon Pipe Line Co.</u>, 458 U.S. 50, 54 (1982)(plurality opinion).  Moreover, <u>Phelps</u> was a liquidation situation, and is inapplicable to reorganization proceedings such as we consider here.  [<u>Id.</u> at 206 n.13.]

---

[6]The property in issue in <u>United States v. Whiting Pools, Inc.</u>, <u>supra</u>, was tangible property.  The property in issue in <u>Phelps v. United States</u>, 421 U.S. 330 (1975), was intangible property.  The Supreme Court granted certiorari in <u>United States v. Whiting Pools, Inc.</u>, <u>supra</u> at 202, to resolve a split in the circuits, between <u>United States v. Whiting Pools, Inc.</u>, 674 F.2d 144 (2d Cir. 1982) (tangible property), and <u>Cross Elec. Co. v. United States</u>, 664 F.2d 1218 (4th Cir. 1981) (intangible property).  Accordingly, we reject petitioners' contention that, with respect to the issue under consideration, a distinction should be drawn between tangible property and intangible property.  See also <u>Meehan v. Wallace</u>, 102 F.3d 1209 (11th Cir. 1997); <u>In re Challenge Air Intl., Inc.</u>, 952 F.2d 384 (11th Cir. 1992).

In <u>United States v. Natl. Bank of Commerce</u>, 472 U.S. 713

(1985), a nonbankruptcy case, the Supreme Court observed that an

"administrative levy, unlike a judicial lien-foreclosure action,

does not determine the ownership rights to the property."  <u>Id.</u> at

731 (citing <u>United States v. Rodgers</u>, 461 U.S. 677, 696 (1983)).

Moreover, in <u>Natl. Bank of Commerce</u>, the Supreme Court held that

"The Court, in other words, recognized what we now make explicit:

that § 6331[7] is a <u>provisional</u> <u>remedy</u>, which does not determine

---

[7]Sec. 6331 provides:

SEC. 6331.  LEVY AND DISTRAINT.

(a)  Authority of Secretary.–If any person liable to
pay any tax neglects or refuses to pay the same within 10
days after notice and demand, it shall be lawful for the
Secretary to collect such tax (and such further sum as shall
be sufficient to cover the expenses of the levy) by levy
upon all property and rights to property (except such
property as is exempt under section 6334) belonging to such
person or on which there is a lien provided in this chapter
for the payment of such tax.  Levy may be made upon the
accrued salary or wages of any officer, employee, or elected
official, of the United States, the District of Columbia, or
any agency or instrumentality of the United States or the
District of Columbia, by serving a notice of levy on the
employer (as defined in section 3401(d)) of such officer,
employee, or elected official.  If the Secretary makes a
finding that the collection of such tax is in jeopardy,
notice and demand for immediate payment of such tax may be
made by the Secretary and, upon failure or refusal to pay
such tax, collection thereof by levy shall be lawful without
regard to the 10-day period provided in this section.

(b)  Seizure and Sale of Property.–The term "levy" as
used in this title includes the power of distraint and
seizure by any means.  Except as otherwise provided in
subsection (e), a levy shall extend only to property
possessed and obligations existing at the time thereof.  In
any case in which the Secretary may levy upon property or
(continued...)

the rights of third parties until <u>after</u> the levy is made, in postseizure administrative or judicial hearings." <u>Id.</u> (examining <u>United States v. Rodgers</u>, <u>supra</u> at 696); see also <u>United States v. Whiting Pools, Inc.</u>, <u>supra</u> at 211.[8]  Thus, the effect of the levy in the instant case is to bring the account receivable into respondent's legal custody.  See <u>United States v. Natl. Bank of Commerce</u>, <u>supra</u> at 721 ("property comes into the constructive

_____

(...continued)
     rights to property, <u>he may seize and sell such property or rights to property (whether real or personal, tangible or intangible</u>). [Emphasis added.]

     [8]In <u>Whiting Pools, Inc. v. United States</u>, <u>supra</u> at 210-211, the Supreme Court stated:

          The Service's interest in seized property is its lien on that property.  The Internal Revenue Code's levy and seizure provisions, § 6331 and 6332, are special procedural devices available to the IRS to protect and satisfy its liens, <u>United States v. Sullivan</u>, 333 F.2d 100, 116 (CA 3 1964), and are analogous to the remedies available to private secured creditors.  See Uniform Commercial Code § 9-503, 3A U.L.A. 211-212 (1981); n.14, <u>supra</u>.  They are provisional remedies that do not determine the Service's rights to the seized property, but merely bring the property into the Service's legal custody.  See 4 B. Bittker, Federal Taxation of Income, Estates and Gifts ¶ 111.5.5, p. 111-108 (1981).  See generally Plumb, Federal Tax Collection and Lien Problems (First Installment), 13 Tax L. Rev. 247, 272 (1958).  * * *  The IRS is obligated to return to the debtor any surplus from a sale.  § 6342(b).  Ownership of the property is transferred only when the property is sold to a bona fide purchaser at a tax sale.  See <u>Bennett v. Hunter</u>, 9 Wall. 326, 336 (1870); § 6339(a)(2); Plumb, 13 Tax L. Rev., at 274-275.   In fact, the tax sale provision itself refers to the debtor as the owner of the property after the seizure but prior to the sale.  Until such a sale takes place, the property remains the debtor's and thus is subject to the turnover requirement of sec. 542(a). [Fn. ref. omitted.]

possession of the Government"); United States v. Whiting Pools, Inc., supra at 211.  In United States v. Natl. Bank of Commerce, supra at 731 n.15, the Supreme Court stated that a "levy does not purport to determine any rights to the property.  It merely protects the Government's interests so that rights to the property may be determined in a postseizure proceeding."

The liability created by a levy on a third party is discharged when the third party honors the levy.  See id. at 721. Cash v. United States, 961 F.2d at 567, states that "when the levied upon property is a debt owed to the taxpayer, such as an account receivable, the levy may be satisfied by paying over to the Government the money owed to the taxpayer."  See also sec. 6332(a), (d);[9] sec. 301.6332-1(a)(1), Proced. & Admin. Regs.[10]

_____

[9]Sec. 6332(a) provides:

SEC. 6332.   SURRENDER OF PROPERTY SUBJECT TO LEVY

     (a) Requirement.--Except as otherwise provided in this section, any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made shall, upon demand of the Secretary, surrender such property or rights (or discharge such obligation) to the Secretary, except such part of the property or rights as is, at the time of such demand, subject to an attachment or execution under any judicial process.

[10]Sec. 301.6332-1(a)(1), Proced. & Admin. Regs., provides:

Surrender of Property Subject to Levy.--(a) Requirement.-- (1) In general.-Except as otherwise provided in § 301.6332-2, relating to levy in the case of life insurance and endowment contracts, and in § 301.6332-3, relating to property held by banks, any person in possession of (or obligated with respect
                                             (continued...)

United States v. Natl. Bank of Commerce, supra, held that "If the custodian honors the levy, he is 'discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment.'" Id. at 721 (quoting section 6332(d)). The liability can also be satisfied by the sale of the property levied upon by the Commissioner. See United States v. Whiting Pools, Inc., 421 U.S. at 211. In the instant case, MMI's bankruptcy trustee paid the remaining portion of the originally assessed liability in 2000.

Petitioners contend that when respondent entered into the December 15, 1978, payment agreement with MMI, which required MMI to make 200 weekly payments of $1,500 to respondent to satisfy petitioners' tax liability, respondent exercised "dominion and control" over petitioners' account receivable, satisfying petitioners' tax liability. In support of their contention, petitioners cite United States v. Barlow's, Inc., 767 F.2d 1098

_____

[10](...continued)
to) property or rights to property subject to levy and upon which a levy has been made shall, upon demand of the district director, surrender the property or rights (or discharge the obligation) to the district director, except that part of the property or rights (or obligation) which, at the time of the demand, is actually or constructively under the jurisdiction of a court because of an attachment or execution under any judicial process.

(4th Cir. 1985), affg. 53 Bankr. 986 (E.D. Va. 1984), affg. 36
Bankr. 826 (Bankr. E.D. Va. 1984).

In United States v. Barlow's, Inc., supra at 1099-1100, the
Commissioner and a third-party debtor of the taxpayer entered
into an installment payment agreement for an account receivable,
which was due the taxpayer, without the taxpayer's participation.
The Commissioner failed to sell the taxpayer's account receivable
pursuant to section 6335, and the Commissioner failed to take any
action against the third-party debtor after the third-party
debtor defaulted on the installment payment agreement. Id.[11] The
District Court, 53 Bankr. at 988, decided that the Commissioner
had taken dominion and control over the account receivable, and
by so doing "precluded Barlows [sic] from proceeding against the
account itself in an effort to defray its tax liabilities.
Section 6332(d) of the Internal Revenue Code divests the

---

[11]The District Court below placed weight on two factors in
deciding that the Commissioner had "dominion and control" over
the levied-upon property in issue:  The Commissioner's failure to
sell the property under sec. 6335, and the payment agreement
between the Commissioner and the third-party debtor that was made
without the taxpayer's participation. See United States v.
Barlow's, Inc., 36 Bankr. 826 (E.D. Va. 1984). On appeal, the
Court of Appeals for the Fourth Circuit decided that the District
Court should be affirmed because the Commissioner exercised
"dominion and control" over the property and the Commissioner
failed to sell the property pursuant to sec. 6335. United States
v. Barlow's, Inc., 767 F.2d 1098, 1100 (4th Cir. 1985). Thus,
the Court of Appeals did not include the sec. 6335 analysis in
determining whether the Commissioner had exercised "dominion and
control" over the property. Petitioners failed to address sec.
6335 in their moving papers.

delinquent taxpayer of any right against the possessor of property levied upon by the IRS."

The facts in the instant case are distinguishable from those in Barlow's, Inc. and do not warrant a similar conclusion here. In the instant case, MMI and respondent entered into the December 15, 1978, payment agreement for 200 weekly payments of $1,500 to satisfy the August 15, 1978, notice of levy. MMI made only six payments under this agreement. Shortly after entering into the payment agreement with respondent, however, MMI went into bankruptcy, in contrast to Barlow's, Inc., where the third-party debtor defaulted on the payment obligation and the Commissioner failed to enforce the payment agreement, instead seeking payment from the taxpayer.

Unlike the taxpayers in Barlow's, Inc., who did not know that the Commissioner and the third-party debtor had negotiated an installment payment agreement for the satisfaction of the taxpayer's liability, petitioners were actively engaged in the negotiations between MMI and respondent regarding the December 15, 1978, payment agreement.

After the August 15, 1978, notice of levy was issued to MMI, petitioners participated in the negotiations between MMI and respondent as to both the amount of the account receivable and the payment agreement. Respondent's records reflect that Mr. Enos informed respondent that he was going to travel from

Massachusetts to Pennsylvania to negotiate with MMI over the amount of the account receivable, and that petitioners and MMI did not agree about the amount. Petitioners and MMI later agreed that the account receivable had a purported value of $300,000. Petitioners indicated that they believed that MMI could pay the $300,000 liability off in 100 weekly payments of $3,000 to respondent. Petitioners were aware of the December 15, 1978, payment agreement between MMI and respondent and that respondent would receive 200 weekly payments of $1,500 to satisfy petitioners' tax liability. Petitioners were aware that MMI sent respondent several $1,500 checks during 1978 and 1979, and, as of April 30, 1979, Mr. Enos knew that MMI was no longer sending respondent money to satisfy the levy.

The most significant factual distinction between the instant case and Barlow's, Inc. is that petitioners continued to receive large amounts of money from MMI after the August 15, 1978, notice of levy and also after the December 15, 1978, payment agreement between MMI and respondent, while at the same time knowing that MMI and respondent were negotiating and did negotiate a payment agreement for the satisfaction of petitioners' tax liability.

Petitioners' business records reflect that after the August 15, 1978, notice of levy, petitioners were purportedly doing business with MMI, despite petitioners' prior alleged inability to collect on MMI's large debt to them, and despite the fact that

petitioners alleged that a number of MMI's checks to them were not honored by MMI's banks. Petitioners' records reflect that petitioners received over $800,000 from MMI after respondent issued MMI the August 15, 1978, notice of levy, of which approximately $210,000 was received on or after December 15, 1978. Petitioners contend that these payments were "partial advance payments to petitioners for assurance of future shipments of scrap metal."

Several payment invoices from MMI to petitioners for invoice Nos. 37, 47, 306, and 419 refer to payments for deliveries that occurred between February and July 1977. According to petitioners' business ledger, which begins in August 1977, the first payments on invoice Nos. 37, 47, 306, and 419 began only after the August 15, 1978, notice of levy was issued to MMI. The payment invoices also provide check numbers for the payments made to petitioners, and those numbers are reported in the "detail" column of petitioners' business ledger. We note that, after August 15, 1978, many payments to petitioners reflected in the accounts receivable ledger bear no check numbers.

Petitioners have not provided us with any other business records or invoices, such as payment slips showing that the payments from MMI were from post-levy dealings with MMI, which might have substantiated their claim that the payments were for "partial advance payments", and that those "partial advance

payments" do not relate to payments on pre-levy liabilities MMI owed petitioners. Petitioners' business ledger shows when certain payments were made and when certain amounts were debited from the balance owed by MMI, but the business ledger does not indicate when the underlying transaction occurred.

Moreover, the notice of determination raised the issue that petitioners received a large amount of money from MMI after the August 15, 1978, notice of levy, and petitioners have failed to rebut that claim or substantiate with credible evidence their claim that the payments petitioners received from MMI after August 15, 1978, were for "partial advance payments". Accordingly, petitioners have failed to carry the burden of proof on the issue. See Rule 142(a).

Petitioners' contention that payments made after August 15, 1978, were "partial advance payments" is contrary to the record in the instant case, and contrary to Mr. Enos's explanation during his 1991 deposition that the payments from MMI to petitioners represented amounts that were "over and above the levy".[12] We are especially doubtful of petitioners' claims in

_____

[12]During the deposition, Mr. Enos stated:

> A. To make it in its simplest form, if we're owed, say, $400,000, and you levied $300,000, that account was over there to pay you off $300,000 and the other hundred thousand was over here. The account was levied on for whatever the amount was there.
>
> Q. So what you are saying; that when the IRS levied on
> (continued...)

light of the large number of payments made by MMI to petitioners after the December 15, 1978, payment agreement between MMI and respondent, and, significantly, where many of those payments by MMI to petitioners, reflected on petitioners' business ledger, do not appear to have been made by check or other negotiable instrument.  We find petitioners' contentions on brief that these payments represent "partial advance payments" to be incredible, especially in light of the following facts:  After the December 15, 1978, payment agreement, respondent received less than $10,000 from MMI, while, at the same time, petitioners' business ledger reflects that they received over $210,000; petitioners knew that MMI was having significant financial troubles; and petitioners participated in the negotiations between respondent and MMI.

------

[12](...continued)
    your tax liability back then was around $310,000 as
    indicated in the levy?

    A. Right.

    Q. And they served a levy on Metals to collect that,
    all properties in their possession up to $310,000?

    A. Right.

    Q. Are you saying they paid you money after the levy
    was served which was attributable to money owed by
    Metals to you before the levy was served?

    A. Before the levy was served for amounts over and
    above the levy.  Once the levy was served, that locked
    in the 310.

MMI's business ledger corroborates the fact that petitioners continued to receive funds from MMI after respondent issued MMI the August 15, 1978, notice of levy.  MMI kept two accounts, and MMI's incomplete ledger, attached to the September 22, 1991, letter between petitioners' attorney David Shaughnessy and MMI's attorney Edward Rothman, indicates that one account is for the $1,500 payments to respondent and the other account is for payments to petitioners.  MMI's business ledger covers a period from November 1978 to February 1979.  MMI debited approximately $340,000 on petitioners' account after the August 15, 1978, notice of levy.  MMI also credited petitioners' account with approximately $420,000 for the same period.

In United States v. Barlow's, Inc., 767 F.2d 1098 (4th Cir. 1985), the court found that the Commissioner's failure to take action against the third-party debtor after it defaulted on its liability to the Commissioner weighed against the Commissioner.  In Cash v. United States, 961 F.2d at 567, the court held that the Commissioner was not required to sell an account receivable and could seek to collect the account receivable on his own, which is what respondent sought to do in the instant case.  See also secs. 6332(a), 6335(f).  Petitioners concede that respondent did not abandon the collection of the account receivable.  Respondent was not able to reach MMI's funds from the start of MMI's bankruptcy in March 1979 until the bankruptcy court ordered

a final distribution of funds in December 1999.  Respondent filed several proofs of claim with the bankruptcy court to protect respondent's rights in that bankruptcy action and also pursued petitioners' other assets to satisfy their tax liability.

Accordingly, we hold that the instant case is distinguishable on its facts from Barlow's, Inc., and that respondent did not exercise dominion and control over the account receivable.

Petitioners contend that we have jurisdiction over their 1970 and 1971 Federal income tax years.  The notice of determination was issued for petitioners' 1971 tax year.  Since petitioners' notice of determination relates only to 1971, we may consider only that year and not 1970 and 1972.  See Moorhous v. Commissioner, 116 T.C. 263, 270-271 (2001).

Petitioners contend that the central issue in the instant case, whether the August 15, 1978, notice of levy issued to MMI satisfied petitioners' liability, was decided by the bankruptcy court in DeHart v. United States, 50 Bankr. 685 (Bankr. M.D. Pa. 1985), and that the principles of res judicata bind us to the decision in that case.

Res judicata applies to prevent the "repetitious suits involving the same cause of action."  Commissioner v. Sunnen, 333 U.S. 591, 597 (1948).  The elements of res judicata are: Identity of the parties, prior judgment by a court of competent

jurisdiction, final judgment on the merits, and the same cause of action. See Hambrick v. Commissioner, 118 T.C. 348, 351 (2002);[13] see also Commissioner v. Sunnen, supra at 597 (quoting Cromwell v. County of Sac, 94 U.S. 351, 352 (1877)).

In DeHart v. United States, supra, the issue was whether the United States was required to pursue petitioners' assets to satisfy the tax liability underlying the Commissioner's claim, which arose from the August 15, 1978, notice of levy, before pursuing the bankruptcy estate's assets to satisfy petitioners' tax liability. The bankruptcy court decided that the Commissioner did not have to pursue petitioners' assets before seeking the assets of the bankruptcy estate to satisfy petitioners' tax liability.[14] The causes of action in DeHart and

---

[13]In Hambrick v. Commissioner, 118 T.C. 348, 351 (2002), we observed:

> The general principle of res judicata is that once a court of competent jurisdiction has entered a final judgment on the merits of a cause of action, the parties to the suit and their privies are bound to each matter that sustained or defeated the claim, and as to any other matter that could have been offered for that purpose. * * *

[14]In DeHart v. United States, 50 Bankr. 685, 688 (Bankr. M.D. Pa. 1985), the bankruptcy court held:

> For these reasons we find that the doctrine of the marshalling of assets simply cannot be applied to the facts of this case. While we do not agree that there is a lack of equity in affording the Government a priority status in this case, we nonetheless realize that the estate, and more particularly the general creditors, do suffer a detriment by the IRS levy. We have determined that the plaintiff's alternative

(continued...)

in the instant case are different and, accordingly, the

principles of res judicata do not apply in the instant case.  See

Hambrick v. Commissioner, supra at 351.

Respondent contends that two cases have already addressed

the central issue in the instant case; i.e., whether the August

15, 1978, notice of deficiency satisfied petitioners' 1971 tax

liability:  Enos v. DeHart, 217 Bankr. 457 (Bankr. M.D. Pa.

1997),[15] and Enos v. United States, Civil Action No. 90-10178-WAG

---

[14](...continued)
argument that the debtor should be subrogated to the
position the IRS has, vis a vis, Enos should be
afforded the debtor.  We, therefore, determine that the
facts of this case present a situation in which the
debtor should be subrogated to the position held by the
IRS pursuant to the levy. * * *

[15]Enos v. DeHart, 217 Bankr. 457, 465 (Bankr. M.D. Pa.
1997), states:

As was observed earlier, the Enoses are ultimately
liable for the tax and the entire amount of unpaid
interest on tax.  Notwithstanding that conclusion, I
recognize the Enoses may argue that by agreeing to
payment terms with Metropolitan, the Internal Revenue
Service exercised such control and dominion over the
account receivable owing the Enoses by Metropolitan
that the Internal Revenue Service may be required to
credit the taxpayer for the full amount of the value of
the receivable levied upon. Barlow's, Inc. v. United
States, 36 Bankr. 826, 829 (Bank. E.D. Va.), affd. 53
Bankr. 986 (E.D. Va. 1984), affd. 767 F.2d 1098 (4th
Cir. 1985).  The impact of such a conclusion on the
Enoses' future liability would be pivotal.
Nevertheless, in recognizing the Enoses' overall
liability to pay their taxes, including interest, I
will take no position as to whether they would have any
defenses to such claim.  A finding as to the ultimate
availability of various defenses by the Enoses to the
Internal Revenue Service does not appear to be
(continued...)

(D. Mass. Sept. 26, 1994). Respondent contends that the principles of collateral estoppel require us to follow the decisions in those cases. Respondent first raised the issue of collateral estoppel in respondent's opening brief. Rule 39 requires respondent to affirmatively plead collateral estoppel in respondent's answer to the petition.[16] Respondent's failure to specifically plead the collateral estoppel issue in his answer or in an amended or amendment to his answer constitutes a waiver of the issue, and accordingly, we will not address the issue. See Rules 39, 41; see also <u>Bonaire Dev. Co. v. Commissioner</u>, 76 T.C. 789, 802-803 (1981), affd. 679 F.2d 159 (9th Cir. 1982); <u>Jefferson v. Commissioner</u>, 50 T.C. 963, 966-967 (1968).

Petitioners contend that they are entitled to an abatement of interest that has accrued since 1977 on their 1971 tax liability. Petitioners failed to pay the taxes reported on their 1971 income tax return, and those taxes were only satisfied when

---

[15](...continued)
necessary for the enforcement of the provisions of the Act, § 21a(15). 11 U.S.C. § 11(a)(15).

[16]Rule 39 provides:

Rule 39. Pleading Special Matters

A party shall set forth in the party's pleading any matter constituting an avoidance or affirmative defense, including res judicata, collateral estoppel, estoppel, waiver, duress, fraud, and the statute of limitations. A mere denial in a responsive pleading will not be sufficient to raise any such issue.

the bankruptcy trustee paid respondent in March 2000. Accordingly, petitioners are not permitted to have the interest on their unpaid income tax liability abated under section 6404. See H. Conf. Rept. 99-841 (Vol. II), at II-811 (1986), 1986-3 C.B. (Vol. 4) 1, 811; see also sec. 6404(e); Downing v. Commissioner, 118 T.C. 22, 30-31 (2002); Parikh v. Commissioner, T.C. Memo. 2003-341. Moreover, for the interest that accrued after the payment from the bankruptcy trustee, there is no evidence that the accrual of that interest was attributable to respondent's error or delay in performing a ministerial duty. See sec. 6404(e); Katz v. Commissioner, 115 T.C. 329, 341 (2000); Parikh v. Commissioner, supra.

Petitioners contend that we have jurisdiction to hold MMI's bankruptcy trustee personally liable for wrongfully refusing to surrender petitioners' property during the pendency of the MMI bankruptcy, pursuant to 31 U.S.C. secs. 191 and 192 and sections 6331 and 6332. Respondent did not send MMI's bankruptcy trustee a notice of deficiency or any other type of determination over which this Court has jurisdiction, and MMI's bankruptcy trustee is not a party to this case. Accordingly, we lack jurisdiction to decide this issue. See generally Estate of Siegel v. Commissioner, 67 T.C. 1033, 1040 (1977); Cincinnati Transit, Inc. v. Commissioner, 55 T.C. 879, 882-883 (1971), affd. 455 F.2d 220 (6th Cir. 1972).

We have considered all of the parties' arguments and contentions that are not discussed herein, and we conclude they are without merit and/or irrelevant.[17]

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.

---

[17]The parties raise the issue of the applicable standard of review.  We need not decide the issue.  See <u>Washington v. Commissioner</u>, 120 T.C. 114 (2003).  Moreover, we reject the contention that we may rely only on evidence contained in respondent's administrative record in deciding the instant case. See <u>Robinette v. Commissioner</u>, 123 T.C. 85 (2004).